## Ex parte BERGDOLL.

(District Court, D. Kansas, First Division. April 4, 1921.)

No. 2154.

1. **Army and navy** ☜═20—Notice by mail to delinquent draft registrant held sufficient.

Under Selective Draft Regulations, § 133, requiring the Adjutant General of a state, on receipt of a report from a local board that a registrant was delinquent in failing to appear for examination when ordered, to forthwith notify such delinquent to report to him at a time designated, not less than 10 days from the date of the notice, and that on failure to report he would be in the military service from that date, the mailing of such notice to the registrant at the address given by him *held* sufficient; personal service, in view of all the conditions, not being required.

2. **Army and navy** ☜═20—Notice to delinquent draft registrant sufficient.

That the time designated in such notice for the delinquent to report was not 10 full days after the date of the notice, where before that time

---

☜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the order was in due form suspended and a second notice given, extending the time, *held* not to prevent the induction of the registrant into the service on his failure to report within the extended time.

Habeas Corpus. On petition of Erwin R. Bergdoll for a writ to obtain release from confinement under sentence of a general court-martial. Denied.

Lee Bond, of Leavenworth, Kan., and John S. Maxwell, of Jacksonville, Fla., for petitioner.

Fred Robertson, U. S. Atty., and L. S. Harvey, Asst. U. S. Atty., both of Kansas City, Kan., for respondent.

POLLOCK, District Judge. Erwin R. Bergdoll, petitioner, confined in the disciplinary barracks, Ft. Leavenworth, this district, under sentence and judgment of a general court-martial for a term of four years, files and presents his petition for writ of habeas corpus to obtain his release from such confinement. To this petition the commandant of the prison has filed his response, which has been duly traversed. On issue so joined evidence dehors the record of the court-martial proceeding has been taken, filed, and ordered made a part of the record of this case, and the matter now stands fully presented in oral argument and on written and printed briefs and arguments for decision.

The facts disclosed by the record, briefly stated, are in substance as follows:

Petitioner, then a citizen of Pennsylvania within the selective draft age, received his questionnaire, answered, and returned it to the local board. On this questionnaire he was classified by the local board 1–A and notified to appear for physical examination. In response to this notice he personally appeared with friends at the home of the chairman of the local board the night before the day he was to be examined, in an effort to be excused from taking the examination. Being unsuccessful in this, he absconded and remained absent and unfound by the authorities for a space of more than two years. Meanwhile he was reported to the Adjutant General of the state of Pennsylvania as delinquent on form No. 1013 S. S. R. On April 29, 1918, he was by the Adjutant General notified to report to him for instructions on May 9, 1918. This notice was given on form No. 1014 S. S. R., and was sent through the mails properly addressed to petitioner at his post office address as by him given the selective draft officials.

In response to this notice the wife of the petitioner addressed a letter to the Adjutant General, claiming petitioner had appeared at the office of the local board and made a claim for deferred classification. The Adjutant General, treating this letter as a response from petitioner himself, on May 2, 1918, suspended the operation of his former order of April 29th and gave petitioner until May 19, 1918, to report to him for instructions. This order was given on form No. 1015 S. S. R. and was properly addressed and mailed to the post office address of petitioner as by him theretofore given to the selective draft authorities.

Petitioner, having absconded, and failing to appear in response to this order of May 19th, was reported absent without leave, and without intent on his part to return or appear in obedience to the law and

orders given him, and was declared a deserter. Thereafter, in the month of August, 1920, petitioner gave himself up to the authorities, was charged and tried before a general court-martial under the Fifty-Eighth Article of War for the crime of desertion (Comp. St. § 2308a), was convicted, and sentenced to confinement in the disciplinary barracks for a term of four years, where, being confined, he has applied for his release from custody on writ of habeas corpus.

The response of the petitioner made by the commandant of the prison admits the detention of petitioner and pleads justification of such detention under the verdict and sentence of the general court-martial which tried him for desertion from the army.

Filed with the petition for the writ is a copy of the proceedings had on the court-martial trial of petitioner, from which it is asserted in the petition the verdict, sentence, and judgment of the court-martial is absolutely void and without jurisdiction for the following reasons, to wit:

(a) It is not shown affirmatively, positively, and unequivocally by said record of proceedings and trial that the alleged court-martial was convened in a territorial department pertaining to and connected with the army of the United States.

(b) It is not shown affirmatively, positively, and unequivocally by said record of proceedings and trial that the alleged members constituting the alleged court-martial as named, and as present and sitting, were officers in the military service of the United States.

(c) It is not shown affirmatively, positively, and unequivocally by said record of proceedings and trial that the convening order, attempting to appoint and convene said alleged court-martial was issued personally by a commanding officer who was in the military service of the United States and who was in command of a territorial department of the army of the United States.

(d) It is not shown affirmatively, positively, and unequivocally by said record of proceedings and trial that the convening order, attempting to appoint and convene said alleged court-martial, was issued in the name and by the authority of a commanding officer who was in the military service of the United States and who was in command of a territorial department of the army of the United States.

(e) It is not shown affirmatively, positively, and unequivocally by said record of proceedings and trial that the individual who is purported to have actually issued the convening order, nor the individual who is purported to have attested the copy of said convening order in the said record of proceedings and trial as "official," either was an officer in the military service of the United States.

The order for the detail of the court-martial reads as follows:

Headquarters Eastern Department, Governors Island, New York.

July 1, 1920.

Special Orders: No. 154.

Extract.

*       *       *       *       *       *       *       *       *       *       *

5. A general court-martial is appointed to meet at Governors Island, New York, on Tuesday, the 6th day of July, 1920, at 10:00 o'clock a. m., or as soon as practicable thereafter, for the trial of such persons as may be properly brought before it.

Detail for the Court:

1. Colonel William H. Allairs, Infantry,
2. Colonel William T. Wilder, Infantry,
3. Colonel Samuel G. Jones, Cavalry,

4. Major John L. Bond, Infantry,
5. Major Robert S. Knox, Infantry,
6. Major William A. Carleton, Infantry,
7. Major Robert G. Rutherford, Jr., Infantry,
  Captain Robert E. Hannay, Jr., Judge Advocate,
    Judge Advocate
  First Lieutenant Thomas L. Hofferman, Infantry,
    Assistant Judge Advocate,
  Captain John M. Weir, Infantry, Defense Counsel.

A greater number of officers cannot be assembled without manifest injury to the service.

The President is authorized to employ a reporter.

(250.42 J. A.)

By command of Major General Bullard:

William Weigel, Colonel, General Staff,

Chief of Staff.

Official:

A. C. Tipton, Adjutant General, Acting Adjutant.

Headquarters Eastern Department, Governors Island, N. Y.

July 30, 1920.

Special Orders: No. 178.

1. Lieutenant Colonel Charles C. Creason, Judge Advocate, is detailed judge advocate of the general court-martial appointed by paragraph 5, Special Orders No. 154, these headquarters, July 1, 1920, vice Captain Robert E. Hannay, Jr., Judge Advocate, relieved as Judge Advocate and appointed Assistant Judge Advocate of the same court, for the trial of Erwin Rudolph Bergdoll, draft registrant, only.  (250.42 J. A.)

By command of Major General Bullard:

William Weigel, Colonel, General Staff,

Chief of Staff.

Official:

Ralph Harrison, Adjutant General, Adjutant.

Headquarters Eastern Department, Governors Island, N. Y.

August 9, 1920.

Special Orders: No. 186.

Extract.

Par. 5. Major Rinaldo R. Wood, Infantry, and Captain Clifford Bluemel, Infantry, are detailed additional members of the general court-martial appointed to meet at Governors Island, N. Y., by par. 5, Special Orders No. 154, these headquarters, July 1, 1920, for the trial of Erwin Rudolph Bergdoll draft registrant, only.  (250.42 J. A.)

By command of Major General Bullard:

William Weigel, Colonel, General Staff,

Chief of Staff.

Official:

Ralph Harrison, Adjutant General, Adjutant.

The charge and specifications on which petitioner was tried by general court-martial, as shown by the record, read as follows:

"Charge: Violation of the Fifty-Eighth Article of War.

"Specification: In that Erwin Rudolph Bergdoll (alias Irwin Rudolph Bergdoll), of Broomall, county of Delaware, state of Pennsylvania, last-known residence and designated address, Broomall, Marple, Pennsylvania, being subject to military service under the Selective Service Act of May 10, 1917, with supplementary and amendatory acts, resolutions and regulations, having been duly registered, on or about the 5th day of June, 1917, under said Selective Service

Law, at precinct of Marple, county of Delaware, state of Pennsylvania, and thereafter being included among those registrants to be classified and arranged by local board for division No. 3 for the county of Delaware, state of Pennsylvania, at borough hall, Ridley Park, Pennsylvania; and thereafter being given order No. 1553, Serial No. 409; and thereafter, on or about the 17th day of January, 1918, questionnaire being returned and submitted to said local board for Division No. 3, by said Bergdoll; and thereafter, on or about the 1st day of February, 1918, said Bergdoll being classified by said local board in class 1–A; and thereafter, on or about the 9th day of April, 1918, said classification being posted in the office of said local board, notice of same mailed to said Bergdoll, and the record of said Bergdoll forwarded to the district board; and thereafter, on or about the 11th day of April, 1918, said district board also classified said Bergdoll in class 1–A; and thereafter, on or about the 15th day of April, A. D. 1918, said Bergdoll being mailed a notice to appear for physical examination; and thereafter, on or about the 24th day of April, A. D. 1918, said local board for division No. 3, Delaware county, Pennsylvania, certifying to the Adjutant General of the state of Pennsylvania that said Bergdoll had failed to report for said physical examination; and thereafter, on or about the 29th day of April, 1910, said Bergdoll being sent notice by mail, on form 1014, delinquent order No. 20863, by the Adjutant General of the state of Pennsylvania to report by mail, telegraph, or in person to the office of the Adjutant General of said state of Pennsylvania not later than 1:00 p. m., on May 9, 1918, and that unless orders rescinding such order were issued that from and after that date he would be in the military service of the United States, and thereafter, on or about the 3d day of May, 1918, said Bergdoll being sent notice by mail, on form 1915, by said Adjutant General of the state of Pennsylvania that the order inducting him into the military service, contained in said delinquent order No. 20863, theretofore mailed on said April 29, 1918, was suspended until 1:00 p. m., on the 19th day of May, 1918, that pending the latter date he would immediately report to his local board, that if he did not do so, then and there, after the date last specified, he would be in the military service of the United States and subject to military laws and thereafter, said Bergdoll failing and neglecting to so report to said local board; said Erwin Rudolph Bergdoll (alias Irwin Rudolph Bergdoll) did then and there, on or about the said 19th day of May, 1918, willfully, knowingly, unlawfully, and with intent to evade such military service, fail and neglect so to report under such induction orders and, being then and there duly inducted into the said military service of the United States, did then and there, thereby, desert the said service of the said United States, and did remain absent in desertion until he surrendered to the military authorities of the said United States at Governors Island, New York, on or about the 21st day of July, 1920.

"[Signed]    James B. Ettridge, Captain, Quartermaster Corps."

The Fifty-Eighth Article of War, under which this charge was made and petitioner tried, convicted, and sentenced, reads as follows:

"*Desertion.*—Any person subject to miltary law who deserts or attempts to desert the service of the United States shall, if the offense be committed in time of war, suffer death or such other punishment as a court-martial may direct, and if the offense be committed at any other time, any punishment, excepting death, that a court-martial may direct."

Conceding the claim of the petitioner to be a correct statement of the law that a court-martial is a court of special and limited jurisdiction, hence the record made in said court, when called in question, mus: affirmatively show on its face the jurisdiction and power of the court to proceed to trial and judgment, as has been many times decided (Kempe's Lessee v. Kennedy, 5 Cranch. 174, 3 L. Ed. 70; Thatcher v. Powell, 6 Wheat. 119, 5 L. Ed. 221; Walker v. Turner, 9 Wheat.

541, 6 L. Ed. 155; Grignon's Lessee v. Astor, 2 How. 319, 11 L. Ed. 283; Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Runkle v. United States, 122 U. S. 543, 7 Sup. Ct. 1141, 30 L. Ed. 1167), and this notwithstanding the recent decision by the Supreme Court in William J. Givens, Appellant, v. Fred G. Zerbst, Warden, 255 U. S. 11, 41 Sup. Ct. 227, 65 L. Ed. ——, promulgated January 31, 1921; yet, taking the record as above stated, and the complete record of the proceedings on the trial of petitioner before the general court-martial, on the one hand, and the law under which courts-martial are and throughout the entire history of our country have been established and conducted, including such general rules and orders of the heads of the Department of War as form part of the law of the land, because of such orders courts take judicial notice (see Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415), on the other hand, and I am of the opinion the record of the trial before the court-martial as disclosed by the copy filed in this case does show on its face that court was lawfully created, organized, and acted in accordance with the established principles of the military law of the land on the trial of petitioner in this case; that the charge of desertion as prepared and presented to the court against petitioner is sufficient to have conferred jurisdiction on that court to hear and determine it, and therefore, on any such ground, the verdict and sentence of the court is not void as by petitioner contended, but, on the contrary, is valid and binding, and does authorize and empower the commandant of the disciplinary barracks to hold petitioner in custody, and on any such ground the writ prayed is denied.

However, at the oral argument, and in the briefs, petitioner relies upon another ground for the granting of the writ of more serious difficulty, namely, that petitioner, at the time he was charged, tried, convicted, and sentenced by the judgment of the general court-martial, was not a part of the military forces of our country, but, on the contrary, was a civilian citizen, who had never been inducted into the military forces of the country as a soldier; hence was not subject to be charged and tried before a military court for the crime of desertion for which he stands convicted. In consequence, he contends his conviction and sentence is null and void, and he is entitled to the writ prayed.

While this ground for the granting of the writ was not asserted or relied upon in the original petition filed by petitioner, and is found alone pleaded in the unverified amendment to the petition, and, as therein asserted, the ultimate fact relied upon is not squarely stated or pleaded, but is raised only in relation to the form and manner in which the notices of the orders made upon petitioner are by the record of the court-martial trial shown to have been given petitioner; and the further claim, invalidity of the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), yet, as the amendment to the petition has been responded to without objection by the government, and as the ultimate fact of whether petitioner was subject to military law because lawfully inducted into the military forces has been

presented, argued, and submitted without objection, for the purpose of this hearing I shall treat that question as having been directly raised.

The grounds upon which it is asserted by the amendment to the petition the judgment of the court martial is null and void read as follows:

"(a) It affirmatively appears from said record that the time set in the alleged notice to petitioner to report to the Adjutant General of Pennsylvania was less than 10 days from the date of the alleged notice; (b) it affirmatively appears from said record that petitioner was never personally served with a notice to report to the Adjutant General of Pennsylvania and that he never actually received any such notice."

The sections of the Selective Service Rules thought applicable to the facts of this case are, as follows:

"Section 132. *Adjutant General to Number 'Delinquent Orders' Serially and to Keep a File of Such Orders.*

"The orders hereinafter prescribed to be given by Adjutants General to delinquents are all to be written on postal card forms. Adjutants General shall keep copies of all such orders, which shall be serially numbered and the number of each such order entered on the original and copy thereof under the caption 'Delinquent Order No. ———' in the upper left-hand corner of the card."

"Section 133. *Adjutant General to Order Delinquents to Report.*

"Upon receipt of form 1013, the Adjutant General of the state shall forthwith notify (form 1014) the persons named therein to report to him for instructions by mail, telegraph, or in person not later than a day and a hour to be specified by such Adjutant General in such notice, which day and hour shall not be less than 10 days from the date of the notice.

"The day and hour shall be specified by the Adjutant General of the state as the day and hour from and after which such registrants shall be in the military service of the United States, unless, upon the registrant reporting as ordered, the Adjutant General shall stay or rescind such order into military service.

"If the order into military service is not stayed or rescinded by the Adjutant General by a subsequent order in writing prior to the arrival of the day and hour so specified, then from and after the day and hour so specified such person shall be in the military service of the United States, and after the arrival of such day and hour the Adjutant General of. the state has no power to stay or rescind such order."

"Section 5. *Forms are Part of Regulations.*

"All forms the use of which is prescribed in these Rules and Regulations, and all forms which were prescribed by pre-existing Rules and Regulations and were in use before and at the date of these Rules and Regulations, the continued use of which is either expressly or impliedly required by these Rules and Regulations, together with the particular rules, instructions and directions contained in all such forms, are a part of these Rules and Regulations."

"Section 286. *Notice to delinquents to report to Adjutant General of State.*

"Delinquent Order No. ———.

"Office of the Adjutant General,
"State of ———,
"Date ———.

"You have been registered under the Selective Service Law and have been given due and lawful notice to present to your local board any reason why you should not be presently inducted into the military service of the United States. You have failed to present any such reason. You are therefore hereby directed to report by mail, telegraph, or in person, at your own expense, to this office for instructions not later than ——— on the ——— day of ———, 19 —. Unless upon your so reporting to this office, orders rescinding the pres-

ent order are issued, then from and after the date just specified you shall be in the military service of the United States.

"————————, Adjutant General."

"Form 1014–PMGO
"See Sec. 133 S. S. R.

"Reserve of Form 1014.

"Penalty for private use, $300.
"War Department, Adjutant General of the State of ————.
"Official Business.

"——————————.
"——————————.
"——————————."

"In order that the local boards may be advised of the action of the state Adjutant General when the delinquent order provided for in section 133 S. S. R. is mailed, that section is amended by adding the following words to the first paragraph thereof: 'A copy of form 1014 showing the name of the registrant under words "delinquent order No." should also be sent at the same time to his local board for its information.'"

"Section 6. *Registrants and Others Charged with Knowledge of These Rules and Regulations.*

"These Rules and Regulations have the force and effect of law, and all registrants, and all persons required by the Selective Service Law and these rules and regulations to be registered, and all persons claiming or to claim any right or privilege in respect of any registrant are charged with knowledge of the provisions hereof. Failure by any registrant, or by any person required to be registered, to perform any duty prescribed by the Selective Service Law, or by these Rules and Regulations, whether or not the time of the performance of such duty is required by these Rules and Regulations to be posted or entered in the records of the local or district board, and whether or not formal notice is required by rules and regulations to be given (such as registering), is a misdemeanor, punishable by imprisonment for one year, and may result in loss of valuable rights and privileges and immediate induction into the military service; and such failure shall also be considered as a waiver of any right or privilege which might have existed in favor of such person if he had performed such duty."

"Note 1. Registrants who change their places of abode and post office addresses must communicate the same to the local boards with which they are registered. Since registrants are bound by law to keep themselves advised of all proceedings in respect to themselves, failure so to do may result in their losing rights to claim exemption or discharge or in subjecting them to penalties. (Telegram 10948, Nov. 29, 1917.)" (Note to Sec. 92, S. S. R.)

The specific objections so taken by petitioner in the amendment to his petition rest upon the following facts:

(1) The notice to petitioner to report to the Adjutant General of Pennsylvania for instructions as contained in form No. 1014 S. S. R. is shown to have been prepared and mailed on April 29, 1918, and the order therein contained was to report on May 9th; hence it is claimed 10 clear days to report were not given as by the law commanded.

(2) As the Selective Service Rules at the date orders 1014 and 1015 S. S. R. were attempted to be given petitioner did not provide in what manner the same should be served upon him, it is contended by petitioner the law required such service to have been personally made or actually given. That constructive service by mail, as was attempted in this case, was not sufficient, and for this reason petitioner was never lawfully inducted into the military service or became subject to be tried by general court-martial for the offense of desertion.

On this head it may be said: Nothing can be more certainly true

274 F.—30

than the fact, if found to exist, if petitioner never became a member of the military forces of his country under the Selective Service Act, he could not desert therefrom. "Res ipsa loquitur."

[1] However, a study of the Selective Service Act and the rules promulgated by the President by authority thereof for its enforcement, as above set forth, having in mind the magnitude of the task undertaken, the necessity for speedy action, and the desire of all loyal citizens to accomplish results, convinces my mind it was intended by the law-making power constructive service by the use of the postal service department of the government in the giving of notice by the administrative boards and officers charged with and engaged in the enforcement of the act should be deemed in law sufficient, and that actual personal notice of service of such formal orders as forms 1014 and 1015 S. S. R. is not required by the act. The case of Farley v. Ratliff (C. C. A.) 267 Fed. 682, is strongly relied upon by petitioner as holding a contrary doctrine. However this may be, I am constrained to the view, as expressed above, the law-making power did not contemplate actual personal notice should be required, but, on the contrary, constructive service through the postal department of the government should be held sufficient.

As the orders required by law to be given essential to the induction of petitioner into the service of his country as a soldier, under the act and rules made in pursuance thereof, are shown to have been duly made and mailed to him at his post office address as by him given to the authorities, I am convinced the same must be presumed to have been by him received, in the absence, at least, of any positive showing to the contrary. See Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395; Schutz v. Jordan, 141 U. S. 219, 11 Sup. Ct. 906, 35 L. Ed. 705; Ex parte Blazekovic (D. C.) 248 Fed. 327.

[2] It is the further contention of the petitioner the 10 days' notice required by the rules to be given of the order on form 1014 S. S. R. was not given him, but 9 days' notice only was given. Conceding this to be true, as within said 9 days said order in due form of law was suspended by the Adjutant General and 10 additional days' time was granted petitioner in which to report, or 19 days in all, no wrong was done him in this respect. And more especially must this be true when, as conceded in this case, petitioner was willfully absent from his usual place of abode, with the intent and purpose in mind of evading his duties as a loyal citizen and the enforcement of the law against him.

As the Selective Draft Act has been presented to, and its constitutional validity upheld by, the Supreme Court, nothing on this head need be said.

As above considered, I have viewed this case in the light of the record as made in the military court alone, on petitioner's trial therein, without regard to the evidence de hors that record offered and received on the hearing of this case. If, however, in the light of the recent decision of the Supreme Court in Givens v. Zerbst, Warden, supra, such extraneous evidence should be considered, in that event, there can be no doubt whatever but that petitioner did receive actual personal notice of the orders inducting him into service; and further

many matters of which the military court and this court take judicial notice as part of the law of the land are shown to have actual existence in fact.

It follows the sentence of the court-martial in valid, and must be upheld and enforced, and the writ prayed must be denied.

It is so ordered.