### UNITED STATES ex rel. FELD v. BULLARD.

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

### No. 203.

1. Army and navy ⊜⇒44(2)—Registrant inducted into service must be tried by military court.

Under Selective Service Act, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044f), making failure to perform duty a misdemeanor if a person is not subject to military law, or subject to trial by court-martial if the person is subject to military law, a registrant under that act who has been inducted into the service in accordance with its provisions, and thereby has become subject to military law must be tried for an offense against the act by the military authorities.

2. Army and navy ⊜⇒47—Court-martial, acting within jurisdiction, cannot be reviewed by civil tribunals.

A court martial's proceedings are not subject to review by civil tribunals except to ascertain whether it had jurisdiction of the person or subject-matter, and whether it had exceeded its powers in the sentence pronounced.

3. Army and navy ⊜⇒38—Ignorance of draft law did not excuse registrant.

A citizen, who had registered under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.), and had then left the country with permission of the authorities, was still subject to service under the act, and his belief, based on ignorance or misunderstanding of the law, that he could not be called, did not excuse his failure to comply with the requirements of the act.

4. Army and navy ⊜⇒20—Only exemptions permitted by Draft Act can be granted.

Under Selective Service Act, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044d), the President was limited as to those persons whom he might excuse or exempt from the operation of the act, and no person could be exempted who did not come within the classes mentioned.

5. Army and navy ⊜⇒20—Citizen held subject to Draft Act, notwithstanding long residence abroad.

Under Selective Service Act, §§ 4, 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044d, 2044e), prescribing the duties and powers of the draft boards and requiring all persons to register, whether they are within the exempted classes or not, and under the regulations for the operation of the law, a citizen who was subject to that act could be inducted into service, notwithstanding the fact that he had resided abroad for several months after his original registration, and was still abroad when ordered into the service.

6. Army and navy ⊜⇒44(2)—Registrant held inducted into service, and amenable to court-martial.

Where a questionnaire was mailed to the last known address to one who had registered under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.), which was not filed by the registrant, though his father returned it, answering some questions, so that the registrant was properly placed in class 1 for failure to file the questionnaire, and was reported to the adjutant general by

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the local board as a delinquent, the mailing to him of notice by the adjutant general to report for instructions inducted the registrant into service, under section 2 (section 2044b), so as to subject him to the jurisdiction of a court-martial.

**7. Army and navy ☞20—Decision of draft board rendered in pursuance of law is final.**

Under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.) and the regulations for its execution, a decision of the local draft board, when rendered in pursuance of law, is final.

**8. Army and navy ☞20—Registrant must prove right to exemption.**

Under Selective Service Regulations, § 7, subd. (f), making failure to claim exemption a waiver of the right, and subdivision (g), providing that failure to receive a questionnaire will not excuse a registrant from performing any duty within the time limit, the facts which entitle a registrant to exemption must be affirmatively proved by him before the local board, which is given power to hear and determine that issue, subject to review by the district board.

**9. Army and navy ☞20—Mailing notice is sufficient.**

The mailing of notice to report to duty, addressed to a registrant at his last known address, by a post card notice unregistered, was sufficient under the Selective Service Regulations; actual personal notice being unnecessary.

**10. Evidence ☞83(1)—Actual mailing of notice need not be proved, if shown by official records.**

The actual mailing of notice of induction into the service need not be proved, if there was official record of that fact.

**11. Army and navy ☞38—Absence from country held not to relieve citizen of obligations under the act.**

While the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.) did not require registrants to remain at home until drafted into military service, the absence of a registrant from the country did not excuse his obligation to perform military duties under the act, but such absent registrant was under obligation to keep in touch and be advised by the local board, and to perform the acts required of him under the act.

**12. Army and navy ☞38—Consent to issuance of passport held not to affect status of registrant.**

The fact that the Provost Marshal General consented to the issuance of the passport to one who had registered under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.) to be absent from the country for six months, and that the passport was subsequently extended by the American consul for successive six month periods, did not deprive the local draft board of authority to induct the registrant into the service, so as to subject him to military law, though it might be considered by the court-martial on his trial for desertion as mitigation, or even as justification.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Joseph Feld, as next friend of Samuel Feld, against Robert L. Bullard, Major General United States Army, Commanding the Second Corps Area, Headquarters, Governor's Island, New York, to obtain the release of Samuel Feld from detention on the charge of desertion. Writ sustained, and discharge granted, and respondent appeals. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William Hayward, U. S. Atty., of New York City (James C. Thomas, Jr., Asst. U. S. Atty., of New York City, and Thomas L. Heffernan, of Providence, R. I., of counsel), for appellant.

Weinberger & Weinberger, of Passaic, N. J. (Harry H. Weinberger, of Passaic, N. J., of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. Appellant appeals from an order sustaining a writ of habeas corpus. The appellee was held in the custody of the commanding officer at Ft. Jay, New York Harbor, having been arrested as a deserter from United States military service. He is said to have been inducted into that service pursuant to the provisions of the Selective Service Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.). The question here presented is whether or not the appellee was lawfully inducted into that service, and therefore whether or not the appellant had jurisdiction to hold him for trial as a deserter.

On June 5, 1917, the appellee was 23 years of age, having been born in the United States. He registered under the Selective Service Law, giving his address as No. 99 Jackson street, Passaic, N. J. Thereafter his registration card was assigned to the local board for division No. 2, Passaic, N. J., and he was given order No. 281, serial No. 1006. On June 9, 1917, he wrote the Provost Marshal General at Washington, D. C., as follows:

"I desire to leave the United States for Brazil. My object is to transact business in hides while there. I understand my obligation under the Draft Act. My post office address will be Rio de Janeiro, Brazil, in case I go. Kindly let me know disposition in my case."

On June 11, 1917, the Provost Marshal General wrote a letter to the Bureau of Citizenship, State Department, which recited that the appellee had satisfied the War Department of his registration under the Act of May 18, 1917, and that it had no objection to the issuance of a passport to him, by means of which letter he procured a passport to leave the United States in July, 1917, to go to Brazil. In the application for a passport he stated that he was an attorney and a hide broker, and he was about to go abroad temporarily and intended to return to the United States within six months, and he further stated that he could be communicated with at 99 Jackson street, Passaic, N. J. He sailed in July, 1917, and remained until July, 1919, and when hostilities ceased he returned to the United States. Upon the expiration of six months provided in the passport, he submitted to the Consul General at Buenos Aires the original passport, upon which the Consul General endorsed an extension and renewal of an additional period of six months, and he continued obtaining extensions of six months each until his new passport was issued to return to this country.

On January 7, 1918, the local board, pursuant to section 92 of the existing Selective Service Regulations, mailed to the appellee at 99 Jackson street, Passaic, N. J., a questionnaire, with notice, pursuant to the law, to fill it out, swear to it, and return it to the local board within seven days. On January 11, 1918, it was partly filled out and

returned to the local board by the appellee's father, the petitioner in this proceeding. It stated that the appellee had a passport to go to South America. It contained a waiver of all claims for exemption or deferred classification. The local board reported to the adjutant general of the state of New Jersey the fact that the appellee failed to return his questionnaire. On April 5, 1918, the adjutant general, pursuant to section 133 of the Selective Service Regulations, mailed to his home a notice or delinquent order directing him to report by mail, telegraph, or in person to the office of the adjutant general of the state of New Jersey by the 15th of April, 1918. The notice provided:

"Unless, upon your so reporting to this office, orders rescinding the present order are issued, then from and after the date just specified you shall be in the military service of the United States."

This order of April 5, 1918 was never rescinded. Appellee did not report as directed and he was recorded as a deserter. He was apprehended through the military authorities of the United States on September 6, 1921. The proper military officer duly preferred a charge under the fifty-eighth Article of War, in which charge and specification it was alleged that he was duly inducted into the military service of the United States, and by his remaining absent deserted that service. This charge is now untried, and, awaiting trial, he was confined in the guard house at Governor's Island, New York Harbor. On April 19, 1919, the appellee was arrested under a charge of having violated the provisions of the Selective Service Regulations and was arraigned in the District Court of New Jersey, but he has never been tried on that charge. After his arrest by the military authorities, he sued out this writ of habeas corpus in the Southern district of New York.

Persons lawfully called, drafted, or ordered into or to duty or for training in military service of the United States are persons subject to military law from the date they are required by the terms of the call, draft, or order to obey the same. Article 2 of Articles of War, 41 Stat. 787. Under the Selective Service Law, approved May 18, 1917, all male persons between the ages of 21 and 30 (except persons already in the military or naval service) were required to register on June 5, 1917. Appellee came within this class as to age, and he registered and became subject to the orders of his local board and to the orders of the adjutant general of the state of New Jersey in accordance with the rules and regulations prescribed by the President on November 8, 1917. What has been said above as to the happening of events as to appellee culminated in the issuance by the adjutant general of the state of New Jersey of an induction order on April 15, 1918. If this order was lawfully made, pursuant to the requirements of the Selective Service Law, then the military authorities have jurisdiction over the appellee, and he may not succeed in this proceeding.

Appellee contends that because of his absence in South America, sailing under a lawfully issued passport, without objection by the War Department, followed by the various extensions by the Consul General at Buenos Aires, he could not be inducted into service during that time by the military authorities. The Provost Marshal General consented to such an absence for six months, and the further exten-

sions made by the consul were without knowledge or consent of the Provost Marshal General or the local board to whose orders he was subject. The situation which confronted the country at the time of the passage of the Selective Service Law required an army of millions, and it was determined that the burden be borne equally by all her citizens, except those provided for, who were required at home. This was emphasized by the President in his proclamation setting the date of registration. Under the act (40 Stat. 1665) the rules and regulations prescribed by the President provided that all persons between 21 and 30 years of age were liable to call, and later, by amendment on August 31, 1918, the ages were fixed at from 18 to 45, and civilians were thus drawn into military service. Provision was made for exemption, and registrants were given the right to a hearing, but this right must be claimed, and, if not claimed, it was waived. The act (chapter 15, 40 Stat. 76 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.]) was held to be constitutional and the rules and regulations thereunder prescribed by the President had the effect of law. Arver v. United States (No. 663) 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856; Angelus v. Sullivan, 246 Fed. 54, 158 C. C. A. 280. The same rules and regulations as were prescribed by the President on November 8, 1917, were in force and effect at the time of the appellee's induction.

[1] We are not concerned with appellee's guilt or innocence of the charge of desertion for, if the military authorities have lawful jurisdiction, they must try that issue. But by section 6 of the Selective Service Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044f), it is provided that:

"Any person * * * who, in any manner, shall fail or neglect fully to perform any duty required of him in the execution of this act, shall, if not subject to military law, be guilty of a misdemeanor, and upon conviction in a District Court of the United States having jurisdiction thereof be punished by imprisonment for not more than one year, or if subject to military law, shall be tried by court-martial and suffer such punishment as a court-martial may direct."

[2] Thus, after the induction, a registrant becomes subject to military law and must be tried for an offense against it by the military authorities. Franke v. Murray, 248 Fed. 865, 160 C. C. A. 623, L. R. A. 1918E, 1015, Ann. Cas. 1918D, 98. If a court-martial has jurisdiction, its proceedings are not subject to review by the civil tribunals, except for the purpose of ascertaining whether a military court has jurisdiction of the person or subject-matter, and whether, though having such jurisdiction, it had exceeded its powers in the sentence pronounced. Carter v. Roberts, 177 U. S. 496, 20 Sup. Ct. 713, 44 L. Ed. 861; Carter v. McClaughry, 183 U. S. 365, 22 Sup. Ct. 181, 46 L. Ed. 236.

[3, 4] Appellee's absence from the United States did not in any manner affect the jurisdiction of the draft officials over him. He was subject to service under the act. He did not come within any of the exempt clauses. He may have thought himself not subject to call in his absence from the country, but his ignorance or misunderstanding of the law did not excuse him. Under section 4 of the act (Comp.

St. 1918, Comp. St. Ann. Supp. 1919, § 2044d), the President was limited as to those whom he might excuse or exempt. Appellee does not claim to come within any of these classes. The method of granting exemption or discharge of registrants was through the medium of the local and district boards created in conformity with rules and regulations as prescribed by the President. Section 4 of the act sets forth a list of officials of county, municipal, state, and federal employés who were exempted, as well as civilians found in various occupations, who, as Congress enacted, were deemed proper persons to be exempted. And section 4 provided for the establishment of local boards in such numbers as were practicable and desirable, providing:

"Such boards shall have power within their respective jurisdictions to hear and determine, subject to review as hereinafter provided, all questions of exemption under this act, and all questions of or claims for including or discharging individuals or classes of individuals from the selective draft, which shall be made under rules and regulations prescribed by the President, except any and every question or claim for including or excluding or discharging persons or classes of persons from the selective draft under the provisions of this act, authorizing the President to exclude or discharge from the selective draft 'persons engaged in industries, * * * including agriculture, found to be necessary to the maintenance of the military establishment, or the effective operation of the military forces, or the maintenance of national interest during the emergency.' "

Paragraphs fifth and sixth, section 4 of the Act, defined the functions and powers of the district boards, granting to them exclusive and original jurisdiction within their respective areas to hear and determine all questions or claims for including or excluding or discharging persons or classes of persons from the selective draft, under the provisions of the act, not included within the original jurisdiction of the local boards, and that the decision of the district board shall be final, except that, in accordance with the rules and regulations as the President may prescribe, he may affirm, modify, or reverse any such decision; and the seventh paragraph of section 4 directs the President to make rules and regulations governing the organization and procedure of the local and district boards. Under section 5 (section 2044e) all persons within the designated ages were required to register, whether or not they were in the exempted classes, or whether or not they were within the classes of persons which the President was authorized to exclude or discharge, and they were to remain subject to draft into the forces authorized.

[5] Thus it appears that the appellee was, under the law authorizing the raising of an army by draft, subject to the draft, despite his long absence in South America, for he was never exempted or excused as provided for in the act. What appellee had, in legal contemplation, was a passport privilege, and that only. It was of no consequence, so far as his military status was concerned, whether he was in or out of the country at the time a draft official acted on his case. Having provided for local and district boards, those tribunals only were vested with the power to excuse or exempt the registrant; and this was so, even though those boards were created and organized after appellee left the country. The purpose of classification and exemption was not of benefit for the registrant, but was a means adopted to select for

service those who could be best spared, and to permit others in certain industries and with certain dependents to remain at home where needed. The law did not confer upon a registrant the right to be exempted. Under certain circumstances, exemption was granted if claimed. It appears that the order in which registrants were called to service was determined by the order number of each registrant. Each secured by direction of the local board a serial number. The drawing for call to duty was made in Washington by the use of those serial numbers. Each registrant was required to fill out, swear to, and return to the local board a questionnaire which was mailed to him. The answers contained in the questionnaire formed the basis for his classification by the local board. Section 100 of the Regulations. By section 129 of the Selective Service Regulations, by failure to make return of the questionnaire on the date required the registrant was deemed to have waived all rights for filing claims and proof for deferred classification, and he automatically was classified in class 1, and would be so recorded by the local board, subject, however, to the rights and privileges of other persons to apply to the local board for deferred classification of the registrant, and of the rights of the registrant or other persons to apply for an extension of time as provided under section 99. By section 130 of the regulations, the local boards reported to the local police the names of persons failing to submit questionnaires. The names of such delinquents, if not located, were reported to the adjutant general of the state. He, in turn, notified by mail the persons so delinquent to report to him for instructions by mail, telegraph, or in person not later than a day and hour fixed. The mailing of the notice by the adjutant general constituted an induction of the delinquent into military service. Selective Service Law, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044b).

[6, 7] As above referred to, the appellee's questionnaire was mailed to his last known address, as required by section 99 of the Selective Service Regulations, and he never filed his questionnaire. His father returned it with some answers, and it was sworn to by his father. Because this act by his father was not in accordance with the rules and regulations, he was placed in class 1 by the local board. No claim for exemption was ever filed by the father or any one else. He was reported to the adjutant general by the local board as a delinquent. Thus it appears that the draft officials followed the requirements of the Selective Service Law and the regulations made. The decision of the board, when rendered in pursuance of law, is final. · Angelus v. Sullivan, 246 Fed. 54, 158 C. C. A. 280; Boitano v. District Board (D. C.) 250 Fed. 812, U. S. v. Finley (D. C.) 245 Fed. 871. Therefore, appellee's call to service was a matter in the hands of the local board, and its placing him in Class 1 and eligible for immediate induction was final. His failure to claim exemption in the manner prescribed by the regulations constituted a waiver. Section 7, subd. (f). By section 7, subd. (g), failure to receive notice or a questionnaire will not excuse a registrant from performing any duty within the time limit, "nor shall it be by itself ground for extension of time." It has been held that registrants who may be exempted can waive such exemption and be inducted into the army and be subject to the dis-

cipline thereof in all respects. United States v. Mitchell (D. C.) 248 Fed. 997; United States v. Bell (D. C.) 248 Fed. 995.

[8] The facts which bring a registrant within the exempted class must be affirmatively proved by him before his local board, which is a tribunal created by the act, and which is given power to hear and determine, subject to review by appeal to the district board, all questions of exemption under this act and the decision of the district board is final. Napore v. Rowe, 256 Fed. 832, 168 C. C. A. 178. His rights must be found within the law. The exemption is a privilege.

[9, 10] Even though the appellee was not at home to receive the notice, mailing it to him complied with the law, and he was liable to immediate induction into military service. The notice provided for was a post card notice. Selective Service Regulations, §§ 5, 286. It was not required to be registered. No other notice than by mail was provided for. Actual personal notice was not provided for by the law. Ex parte Bergdoll (D. C.) 274 Fed. 458. It was found as a fact below that this notice was mailed April 15, 1918, to his last known address. We concur in that conclusion of fact. It is admitted in the traverse to the return herein that he failed to file his questionnaire. It was not necessary to prove the actual physical mailing of the letter, in view of the official record of the fact. Nofire v. United States, 164 U. S. 657, 17 Sup. Ct. 212, 41 L. Ed. 588; Ross v. Stewart, 227 U. S. 530, 33 Sup. Ct. 345, 57 L. Ed. 626.

[11] While the Selective Service Act did not require registrants to remain in their permanent homes or places of legal residence until drafted into the military service, and while no such requirements are found in the regulations prescribed by the President, still his absence did not excuse him in any sense from his obligation to perform military duties under the act. Indeed, he stated in his application for a passport that he intended to return to the United States within six months for the purpose of residing and performing the duties of citizenship therein. It was his obligation to keep in touch and be advised by his local board and perform his acts, including the acts of reporting when required under the Selective Service Law.

[12] We do not think that the letter of the Provost Marshal General, consenting to the issuance of a passport, and the extension of his passport given by the government official, the Consul General in South America, can affect his status in the military service, for, as pointed out, he could be exempted and excused only through the medium of the local and district boards established for that purpose. The fact that permission was granted to issue a passport by one department of the government and that there were extensions granted by the Consul General in South America, may be matters in mitigation of the offense, and might properly be called to the attention of and considered by the judges who sit in the court-martial proceeding in determining the guilt or innocence of the charge of desertion and the punishment to be inflicted, if guilty.

We think the court below was in error in sustaining the writ and discharging the appellee. The order is reversed.