**HURLEY, Secretary of War, et al. v. CRAWLEY.**

No. 5336.

Court of Appeals of District of Columbia.
June 1, 1931.

Leo A. Rover, of Washington, D. C., for appellants.

W. E. Miller, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by the Secretary of War and the United States Civil Service Commission from an order of the Supreme Court of the District of Columbia granting a writ of mandamus commanding that petitioner there, who is appellee here, be given the preferential status provided by Civil Service Rule VI (as amended by Executive Order of March 2, 1929), which follows:

"Examination papers shall be rated on a scale of 100, and the subjects therein shall be given such relative weights as the commission may prescribe. Honorably discharged soldiers, sailors, and marines shall have five points added to their earned ratings in examinations for entrance to the classified service. Applicants for entrance examination who, because of disability, are entitled either to a pension by authorization of the Bureau of Pensions or to compensation or training by the Veterans' Bureau, and widows of honorably discharged soldiers, sailors and marines, and wives of injured soldiers, sailors, and marines who themselves are not qualified, but whose wives are qualified for appointment, shall have. ten points added to their earned ratings. * * *

"All competitors rated at 70 or more shall be eligible for appointment, and their names shall be placed on the proper register according to their ratings; but the names of disabled veterans, their wives, and the widows of honorably discharged soldiers, sailors, and marines shall be placed above all others. * * * *"

The petitioner was a resident of the District of Columbia, and on August. 26, 1918, he was ordered by the local draft board to report on September 2, 1918, for military duty at a place and hour named.

Under the procedure of the draft, based upon acts of Congress and Executive Orders of which the court takes judicial notice, Crawley must have theretofore made two appearances in connection with his military service:

First, when he registered before the local board.

Second, when he appeared for preliminary physical examination.

As a result of these appearances, he was classified; and as a result of his classification, he was inducted by the following order:

"Order of Induction into Military Service of the United States

"The President of the United States to Howard Lacy Crawley.
(Christian name) (Surname)

"Order Number 155. Serial Number 59.

"Greeting:

"Having submitted yourself to a local board composed of your neighbors for the purpose of determining the place and time in which you can best serve the United States in the present emergency, you are hereby notified that you have been selected for immediate military service.

"You will, therefore, report to the local board named below at city post office, at
(Place of reporting)
8 p. m., on the 2nd day of September, 1918,
(Hour of reporting)
for military duty.

"From and after the day and hour just named you will be a soldier in the military service of the United States.

"J. Rozier Biggs,

"Member of Local Board for Division No. 4,

"District of Columbia.

"Report to local board for ————.

"Local Board for Division No. 4, District of Columbia, Room 405,

"District Building, Washington, D. C.

"Date, August 26, 1918."

Crawley duly received and obeyed this order; he reported at the time and place named, and was sent by train to Camp Lee in Virginia, where he arrived on September 3.

On September 4th he was admitted to the base hospital for treatment of an infected thumb; was discharged from the hospital on September 26; was again admitted to the base hospital October 3, and remained there until November 9, when he was examined, found physically disqualified for military service, and on that day discharged from the hospital, the draft, and the military service.

The petitioner alleges that on September 26, when he was discharged from the hospital after treatment for his thumb, he was ordered back to duty, and influenza being epidemic in the camp, his duties included the moving of cots which had been occupied by influenza patients, and similar services until he was taken ill with influenza and sent to the hospital for treatment thereof on October 3.

The answer of the Secretary states that from September 26 to October 3, the petitioner was with the 155th Depot Brigade awaiting his turn for physical examination for acceptance or rejection as a soldier.

The record is silent as to the nature of the physical disqualifications for which he was finally discharged on November 9, but the Secretary of War in his answer admits "that petitioner was in the military service of the United States from the date of his induction to the date of his discharge from the draft, and that his separation from the military service was under honorable conditions," but denies that the petitioner ever was a soldier of the United States.

The question thus presented for decision is whether a man so inducted into the military service of the United States and remaining there for nine weeks becomes a soldier of the United States within the meaning of the law.

The Selective Service Act was early held by the Supreme Court to be constitutional and valid, Selective Draft Law Cases, 245 U. S. 366, 38 S. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856.

And in several cases between public authorities and alleged delinquents of the draft it has been decided that while a man not lawfully inducted into the military service could not be subject to military punishment by military courts, such induction could be lawfully accomplished for purposes of punishment by orders similar to the one in question here, even though actual receipt of the order was not shown.

It is sufficient to show the mailing of an unregistered postal card bearing the order.

And even the mailing of such a card need not be shown as a fact within the knowledge of any witness, but merely the existence of an official record of such a mailing, and this even to a man who after registering for the draft left the country with the knowledge and permission of the military authorities. In re Bergdoll (D. C.) 274 F. 458; U. S. v. Bullard (C. C. A.) 290 F. 704; U. S. v. McIntyre (C. C. A.) 4 F.(2d) 823.

"As the orders required by law to be given essential to the induction of petitioner into the service of his country as a soldier, under the act and rules made in pursuance thereof, are shown to have been duly made and mailed to him at his post office address as by him given to the authorities, I am convinced the same must be presumed to have been by him received, in the absence, at least, of any positive showing to the contrary." Bergdoll's Case, supra, 274 F. at page 466.

If a drafted man ordered by mail to report for duty, who contends the order was never received, and the receipt of which is not established, can be punished by court-martial as a deserting soldier, surely such a man who receives such an order, and obeys it, reports for duty, and performs whatever duty is assigned until discharged for physical disqualification, is entitled to be treated as a soldier, ad interim.

Can the military authorities demand and obtain a wide and liberal construction of penal provisions, incidentally necessary to the execution of a great purpose, and, at the same time, a narrow and exclusive construction of remedial provisions created by Congress and the President in their mercy?

We think not.

And, furthermore, it is conceded that after the war this petitioner was held to be entitled from the Veterans' Bureau to both vocational training and disability compensation, while it is denied that he is entitled to a place on the veterans' preferential list for employment.

But we cannot think the nice distinction attempted here is within the intention of Congress in its legislation for veterans' relief; for this would be to pay a man for disability incident to his service, train him at government expense to earn his living, but deny him the preference which might enable him to utilize the very training so provided.

And this military preference to civil employment goes to appointment only, and not to retention in the civil service.

For an appointee from the preferred list is always subject to removal for inefficiency or other cause, as other appointees are, and consequently the efficiency of the civil service is not endangered by the system. Keim v. U. S., 177 U. S. 290, 20 S. Ct. 574, 44 L. Ed. 774.

In our opinion the order of the trial court was right, and it is consequently affirmed.

Affirmed. .