DAVIS v. WOODRING, Sec. of War.
No. 7534.

United States Court of Appeals for the
District of Columbia.

Argued Feb. 13, 1940.

Decided April 8, 1940.

James E. McCabe and Harry J. Harth, both of Washington, D. C., for appellant-petitioner.

David A. Pine, U. S. Atty., and William S. Tarver, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, C. J., and MILLER and VINSON, JJ.

GRONER, C. J.

On July 20, 1918, petitioner, having been duly called by the local draft board in Knoxville, Tennessee, and found qualified, received an order inducting him into the military service of the United States.[1]  On July 29 he arrived at a mobilization camp

---

[1] Draft Act of May 18, 1917, 40 Stat. 76, 50 U.S.C.A. § 226 note.

in South Carolina, was issued the usual army equipment, and assigned to Company A, 5th Pioneer Infantry. He took the required oath and received instructions as to the duties of a soldier, but on August 1 the camp physician found him to be underweight and therefore disqualified for active military service. He was thereupon recommended for rejection, but continued between August 1 and August 6 to perform the duties of a soldier, and on the latter date became ill and was admitted to the hospital. He remained there until August 30. On August 12 the camp commander approved the recommendation of the examining physician,[2] and on petitioner's discharge from the hospital he was given a certificate, dated August 9, entitled "Discharge from Draft" and reading:

"To all whom it may concern:

"This is to Certify, That Lloyd M. Davis, 4,071,067, is hereby discharged from the military service of the United States by reason of underweight * * *" etc.

Petitioner received at the same time transportation to his home and his pay for services from July 29 to August 9. In 1919 he received the $60 bonus provided by Congress for honorably discharged persons in the military or naval forces of the United States during the World War.[3] In 1923 petitioner applied to the Veterans' Administration for compensation and vocational training. Compensation was refused, and the record does not show what was done about vocational training. In 1936 petitioner, having developed tuberculosis, applied to the Veterans' Administration for hospitalization. Treatment was refused because under applicable rules such benefits are extended only to veterans possessing honorable discharge certificates.[4] Petitioner asks no relief against the Veterans' Administration, for the obvious reason that Congress has denied judicial review of the administrator's decisions in such matters.[5] What he seeks is (1) mandamus to require the Secretary of War to issue to him a certificate of "honorable discharge" from the army or (2) a declaratory judgment that he was lawfully inducted into the military service of the United States and performed therein the duties of a soldier in the army and is entitled to an "honorable discharge" certificate.

The learned judge of the District Court made findings of fact, denied relief, and entered judgment dismissing the petition and discharging the rule to show cause.

The Secretary of War admits that petitioner was regularly inducted into the service of the United States as a soldier, conformed to regulations, and was thereafter discharged solely because of underweight.

The single question for decision is whether the certificate furnished to him complied with the law as it was at that time.

The 108th Article of War (Act of Aug. 29, 1916, ch. 418, § 3, 39 Stat. 668) reads as follows:

"No enlisted man, lawfully inducted into the military service of the United States, shall be discharged from said service without a certificate of discharge, signed by a field officer of the regiment or other organization to which the enlisted man belongs or by the commanding officer when no such field officer is present; and no enlisted man shall be discharged from said service before his term of service has expired, except by order of the President, the Secretary of War, the commanding officer of a department, or by sentence of a general court-martial."

Army Regulations adopted by the Secretary and in effect prior to our entry into the World War [6] divided discharge certificates into three classes and established the proper forms for each:

1. Honorable discharges were issued "when the soldier's conduct has been such as to warrant his re-enlistment and his service has been honest and faithful".

2. Dishonorable discharges were issued to soldiers discharged "by sentence of a court martial or a military commission"; and

---

[2] Petitioner contends that the camp commander did not "approve" the recommendation but in fact "disapproved" it, but the trial court found against this contention, and we think the evidence abundantly sustains this finding.

[3] Act of Feb. 24, 1919, sec. 1406, 40 Stat. 1151.

[4] The form of honorable discharge certificates is—"That ——— as a Testimonial of Honest and Faithful Service is hereby Honorably Discharged from the military service of the United States by reason of ———."

[5] Act of March 20, 1933, ch. 3, T. 1, sec. 5, 48 Stat. 9, 38 U.S.C.A. § 705.

[6] Authority to make such regulations is given by Act of June 8, 1872, ch. 335, 17 Stat. 283.

3. "Discharges" were issued when the soldier was discharged under other conditions than "as specified under 1 and 2".

If this were all, we should be obliged to say that petitioner should have been given an honorable discharge, since admittedly his "conduct" warranted his re-enlistment, and his service was honest and faithful. But after our entry into the war and the passage of legislation creating a national army through the Selective Draft Act, the Secretary of War, under date of January 12, 1918, issued an order to mustering officers and others attached to mobilization camps, requiring them to make and forward records of accepted and rejected men on prescribed forms. Under the title "Disposition of Rejected Men", there is to be found a provision that men "discharged from draft" shall be furnished a certificate of discharge on Form No. 638 A. G. O., which is the form furnished to petitioner in this case.

█ Petitioner insists that the form used was issued without authority of law, and was otherwise invalid because it was antedated, that is to say, was dated prior to the actual date of discharge.

We think the latter contention is correct, since paragraph 152 of the Army Regulations expressly provides that a soldier's discharge takes effect on the date of notice, unless by reason of his own fault notice cannot be given. The discharge was doubtless withheld for delivery on his release from the hospital, but correction of the date would at most entitle him to pay for the interim, which is not what he is demanding.

█ As to the first point, the trial court held that there was no article of war prescribing the form or terms of the discharge certificate, but that discretion in such matters had been delegated by Congress to the Secretary of War, and that under this authorization the Secretary could from time to time adopt such forms as the exigencies of the service required. We concur in this view.

█ Petitioner urges the contrary, apparently, only on the ground that the regulation in question was promulgated by the Secretary and not by the President. But, even if we assume that the Selective Draft Act conferred expressly on the President the making of rules and regulations, we nevertheless should have to hold that the act of the Secretary was the act of the President.

"The Secretary of War is the regular constitutional organ of the President for the administration of the military establishment of the nation, and rules and orders publicly promulged through him must be received as the acts of the executive, and as such, be binding upon all within the sphere of his legal and constitutional authority." United States v. Eliason, 16 Pet. 291, 302, 10 L.Ed. 968. And see, also, Runkle v. United States, 122 U.S. 543, 557, 7 S.Ct. 1141, 30 L.Ed. 1167.

█ If, therefore, we are correct in thinking that the Secretary's January 12th order, amending the former regulations in respect to the form of discharges, was within his power, it follows that what petitioner received in this case—being in accordance with existing regulations and also in accordance with the actual facts—was all that he could lawfully demand. While, therefore, we have no hesitation in holding that petitioner was a soldier of the United States subject to the laws and regulations governing the army (cf. Hurley, Sec'y, v. Crawley, 60 App.D.C. 245, 50 F.2d 1010), and that he served under "honorable conditions" and was discharged only because of physical unfitness, we cannot because of these facts interfere with the internal management of the War Department or require it to issue discharge papers contrary to its established rules. Congress having failed to prescribe the form of discharge and having left it to the discretion of the President acting through the Secretary, we are wholly without any effective power of review. Work v. United States ex rel. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561. That this must result in the denial of veteran hospitalization to petitioner is regrettable, but beyond our control.

Affirmed.