**UNITED STATES v. RAPPEPORT, and three other cases.**

District Court, S. D. New York.

Jan. 21, 1941.

916

John T. Cahill, Mathias F. Correa, and Robert L. Werner, all of New York City, for the United States.

Joseph G. Glass and James Lipsig, both of New York City, for Stanley Rappeport and Howard Schoenfeld.

Julien D. Cornell, and James Lipsig, both of New York City, for Albert Herling, Francis Hall, and William Allen Winslow.

BONDY, District Judge.

In separate indictments each of the defendants is charged solely with having failed to register as required by the Selective Training and Service Act of 1940, 50 U.S.C.A.App. §§ 302, 310(a)(1), 311, 314(a), and the rules and regulations made pursuant thereto. Presidential Proclamation, 5 Fed.Reg. 3699, 1940; Selective Service Regulations 201, 202, 203, 5 Fed. Reg. 3786, 1940.

All the defendants demurred to the indictments on the ground that the Act is unconstitutional because the Constitution does not empower Congress to compel military training or service in time of peace and because, even if Congress did have such power, some provisions of the Act violate the Constitution and the Amendments thereto guaranteeing civil liberties at all times.

In the Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856, the Supreme Court of the United States definitely decided that the Selective Draft Act of 1917, 50 U.S.C.A.Appendix §§ 201–214, which contained many provisions similar to those in the Act under consideration and which was similarly challenged, was constitutional and that Congress has the power to raise armies by conscription under the provisions of the Constitution giving Congress power to declare war, to raise and support armies, to make rules for the government and regulation of land and naval forces, and to make all laws which shall be necessary and proper for carrying into execution the foregoing powers.

The defendants urge that the Selective Draft Law Cases, supra, are not controlling because the statute therein considered was enacted while the United States was at war, and because the Act under consideration for the first time in the history of the United States provides for peacetime conscription.

It is a fact that at the time of the enactment of the 1917 statute, the United States was at war and that the Supreme Court of the United States referred to the emergency then existing, but it did not hold nor intimate that the emergency created the power to raise armies by conscription or that the power conferred by the Constitution could be exercised only in time of war and not in any other emergency.

That the United States may be unprepared to resist an aggressive and destructive force which has subjugated many peaceful nations and which may seek to overpower the United States presents an emergency as serious as armed conflicts in which the power to draft could not be questioned.

The Constitution in some of its provisions expressly refers to "time of peace" and "time of war", Art. 1, Sec. 10, Amends. III, V. See Art. 1, Sec. 9. The provisions of the Constitution granting power to Congress to raise and support armies, and to provide and maintain a navy and to make rules for the government and regulation of the land and naval forces, however, do not restrict the exercise of such power to "time of war" nor do they impose any limitation as to the time or manner of exercising such power. It can not be assumed that the Constitution intended to prevent the raising of an army by voluntary enlistment or conscription until war has been declared or actually begun. The provisions can not be construed so as to restrict the exercise of the

power in a way requiring a delay that may render the grant of the power useless.

Even if Congress has not the power to conscript in time of peace, or if some of the provisions of the Act are unconstitutional, the indictments may not be dismissed.

The indictments charge the defendants only with failure to register.

■ It is well established that Congress has the power to secure needed information relative to legislative action through registration and answers to questionnaires, Electric Bond & Share Co. v. Securities & Exchange Commission, 303 U.S. 419, 437, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105, as well as through congressional committees, Sinclair v. United States, 279 U.S. 263, 291, 49 S.Ct. 268, 73 L.Ed. 692; McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1, or through administrative bodies existing or to be created in the manner prescribed by Congress, and that Congress may provide for the punishment of those who thwart the inquiries. See Sinclair v. United States, supra; Townsend v. United States, 68 App.D.C. 223, 95 F.2d 352, certiorari denied 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121. Accordingly Congress undoubtedly has the power to seek information through registration or otherwise in peacetime in order to be prepared for the intelligent exercise of its power to raise armies by conscription even if its power to conscript can be exercised only in time of war.

■ Section 14(b) of the statute, 50 U.S.C.A.Appendix § 314(b) expressly provides that if any provision of the Act, or the application thereof to any person or circumstance, is held invalid, the remainder of the Act and the application of such provision to other persons or circumstances shall not be affected thereby. This creates a presumption of separability of the provisions of the Act and indicates that Congress intended that valid portions of the statute are to be effective in spite of the invalidity of other provisions thereof. Electric Bond & Share Co. v. Securities & Exchange Commission, supra. The legislative history of the Act does not rebut this presumption. Although one of the purposes of requiring registration was to facilitate a peacetime conscription when circumstances would make it imperative in the judgment of Congress and the President, the sponsors of the bill expressly stated that a chief function of the registration would be to furnish Congress with "an inventory of the manpower of the country" and that they hoped that the voluntary enlistment provided for in Section 3a would avoid the necessity of using the registration as the basis for conscription. Cong. Rec. August 12, 1940, pages 15557, 15558, 15562; Hearings Before the Committee on Military Affairs on S. 4164, 76th Cong. 3d Sess.(1940) 85; Hearings Before the Committee on Military Affairs on H.R. 10132, 76th Cong. 3rd Sess.(1940) 10, 36. Accordingly, had Congress been of the opinion that it did not possess the power to draft men for military service in time of peace, it is probable that Congress would have enacted a statute providing for an immediate registration but postponing conscription until a declaration of war.

There is no inherent or practical difficulty in separating the provisions with reference to registration from other provisions which may be held unconstitutional. The conscription provisions are not so interwoven with the registration provisions that the operation of the latter would be affected in any manner if the conscription provisions are inoperative.

■ The defendants' contention that by submitting to the registration they would be held to have subjected themselves to all the provisions of the Act and to have waived their right to assert the invalidity of the other provisions can not be sustained. The registration provision is so independent of the other sections of the Act that it may be considered as though it is a separate statute, submission to which does not affect the right to challenge the constitutionality of the other sections. Electric Bond & Share Co. v. Securities & Exchange Commission, supra.

■ Nor would the defendants be prevented from attacking the validity of the Act on the ground that they would be subject to military discipline after registration. Section 11 specifically provides that any person who violates any provision of the Act, rules, regulations or directions made pursuant thereto is to be tried in the United States District Court and that no person is to be tried by court martial until he has been actually inducted for training and service prescribed under the Act, unless he is subject to trial by court martial under the laws in force prior

to the enactment of this Act. This last clause does not, when read together with 10 U.S.C.A. § 1473(a), providing for persons subject to military law, justify the conclusion that a person who is lawfully ordered but not yet inducted into military service under the Selective Training and Service Act would be subject to court martial. Such a construction would render meaningless the prior provision "unless such person has been actually inducted for the training and service prescribed under this Act." Moreover, the Court's construction is borne out by the legislative history of the Act. See Cong.Rec. Sept. 7, 1940, pages 17755–17757; H.R.Rep.No. 2947, 76th Cong. 3rd Sess.(1940) 20; H.R. print of S. 4164, Sept. 7, 1940, Sections 7 and 10.

The demurrers accordingly must be overruled.