## UNITED STATES v. GARST.

### No. 8788.

District Court, E. D. Pennsylvania.

June 18, 1941.

Gerald A. Gleeson, U. S. Atty., and Edward A. Kallick, Asst. U. S. Atty., both of Philadelphia, Pa., for plaintiff.

Julian D. Cornell, of New York City, for defendant.

KALODNER, District Judge.

The demurrer is overruled.

The questions raised in the demurrer were disposed of by District Court Judge Bondy, of the Southern District of New York, in his opinion in United States v. Rappeport et al., 36 F.Supp. 915, affirmed by the United States Circuit Court of Appeals for the Second Circuit, in a per curiam opinion on June 2, 1941, United States v. Herling, 120 F.2d 236.

I think it appropriate to call attention to the decision of the United States Supreme Court in United States v. Tarble, 13 Wall. 397, 20 L.Ed. 597, and the statement made therein with respect to the right of Congress, by the provisions of Article 1, Section 8, Clause 12, of the Constitution of the United States "To raise and support Armies". While the statement was obiter dicta, it was made in the course of a discussion of the power of Congress "To raise

and support Armies". It must be kept in mind, too, that this decision came at a time when the country was at peace— March 4, 1872.

Said the Supreme Court in the Tarble case (13 Wall. at page 408, 20 L.Ed. 597) : "Now, among the powers assigned to the National government, is the power 'to raise and support armies,' and the power 'to provide for the government and regulation of the land and naval forces.' The execution of these powers falls within the line of its duties; and its control over the subject is plenary and exclusive. *It can determine, without question from any State authority, how the armies shall be raised, whether by voluntary enlistment or forced draft,* the age at which the soldier shall be received, and the period for which he shall be taken, the compensation he shall be allowed, and the service to which he shall be assigned. And it can provide the rules for the government and regulation of the forces after they are raised, define what shall constitute military offences, and prescribe their punishment." (Emphasis supplied.)

The legislative history of the Constitution itself disposes of the contention by the defendant in this case that the power "To raise and support Armies" is limited to volunteer service in such armies in peace time.

On May 29, 1790, the Rhode Island Convention proposed an amendment to the Constitution specifically providing : "That no person shall be compelled to do military service otherwise than by voluntary enlistment, except in cases of general invasion ; anything in the second paragraph of the Sixth Article of the Constitution or any law made under the Constitution to the contrary notwithstanding." 1 Elliot's Debates, p. 336.

This proposed amendment indicates conclusively that it was universally accepted at the time that the Constitution definitely empowered Congress "to raise and support armies" by conscription in time of peace. The legislative history discloses that the Rhode Island Convention's amendment limiting conscription to cases of general invasion was never acted upon. This certainly demonstrates that the framers of the Constitution intended that the power "To raise and support Armies" should include conscription in time of peace.

The following excerpt from an article by Alexander Hamilton in The Federalist (No. XXIV), written at the time that the

proposal was made to limit the congressional power "To raise and support Armies", is highly significant and enlightening as to the interpretation and intendment of the Constitution makers on the subject of the disputed provision. Said Alexander Hamilton: "If to obviate this consequence" (the danger of usurpation of power by a combination of the executive and legislative in time of peace), "it should be resolved to extend the prohibition to the *raising* of armies in time of peace, the United States would then exhibit the most extraordinary spectacle which the world has yet seen—that of a nation incapacitated by its Constitution before it was actually invaded. As the ceremony of a formal declaration of war has of late fallen into disuse, the presence of any enemy within our territories must be waited for, as the legal warrant to the Government to begin its levies of men for the protection of the state. We must receive *the blow* before we could even prepare to return it."