### Ex parte THIERET.

(Circuit Court of Appeals, Sixth Circuit. November 3, 1920.)

No. 3464.

1. **Army and navy ⬛➡20—President authorized to revoke temporary certificates of exemption.**

   Under Selective Service Act 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044d), authorizing the President to exclude or discharge from the draft persons engaged in essential industries or having dependents, and to create local district boards and make rules and regulations governing them, and providing for the issuance of certificates of exemption, the President had authority to revoke, as he did by regulations prior to December 15, 1917, all exemptions and certificates theretofore made, since the act itself gave no absolute industrial or dependency exemption.

2. **Army and navy ⬛➡20—Proclamation revoking exemption applies to all not actually drafted.**

   The President's foreword of November 2, 1917, to the new draft regulations, revoking all exemptions and certificates thereof theretofore issued, was by its terms made applicable to all men subject to draft, except those already inducted into the military service.

3. **Habeas corpus ⬛➡16—Person arbitrarily denied deferred classification is entitled to habeas corpus.**

   Where a person was denied exemption ·or deferred classification, to which he was entitled under the Selective Service Act and the President's proclamation, by the district board, unfairly, and by gross abuse of discretion, and without good-faith opportunity for a hearing, be is entitled to relief by habeas corpus, but otherwise he is not.

4. **Habeas corpus ⬛➡16—Record held not to show claim of deferred classification so arbitrarily denied as to warrant relief.**

   Where petitioner in his draft questionnaire stated he was engaged in necessary industry, but that he did not claim deferred classification on that ground, and he did not file the two affidavits required to support such claim, though there was some evidence that one at least of such affidavits was presented to the district board by his employers after the local board

⬛➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had recommended denial of deferred classification, the denial of such classification by the district board is not so arbitrary or unreasonable, or such an abuse of discretion, as to warrant relief by habeas corpus.

**5. Army and navy ⬅20—Industrial exemption must be claimed in new questionnaire, notwithstanding prior exemption.**

The right to deferred classification, because engaged in a necessary industry, must be claimed by petitioner in the answers to the second questionnaire, after former certificates of exemption have been expressly revoked by proclamation of the President, though petitioner held a certificate of such exemption, revoked by the proclamation.

**6. Army and navy ⬅44(2)—Person ordered to entrain for military duty is subject to military law.**

Under Selective Service Act, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044b), declaring all persons drafted into the service to be subject to the laws governing the regular army, and Articles of War, art. 2, making persons lawfully called to duty or for training in the military service subject to military law, a person ordered by the district draft board to entrain for an encampment for induction into the military service is subject to military law, and liable to punishment by a military court for desertion.

**7. Army and navy ⬅44(1)—Pending indictment no bar to trial by military court.**

Under Selective Service Act May 18, 1917, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044f), making failure or neglect to perform any duty required by that act a misdemeanor, if the person is not subject to military control, a man who had been ordered to entrain for military service, and thereby became subject to military law, can, notwithstanding his indictment for violation of the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a et seq.), be delivered by the civil authorities to the military court for trial and punishment for desertion.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Petition by Frederic Thieret for writ of habeas corpus. From an order denying the writ, petitioner appeals. Affirmed.

Wm. Gordon and John J. Sullivan, both of Cleveland, Ohio, for appellant.

H. L. Eastman, Asst. U. S. Atty., of Cleveland, Ohio (E. S. Wertz, U. S. Atty., of Cleveland, Ohio, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. Appellant is a natural-born citizen of the United States. On June 5, 1917, being of draft age, he duly registered under Selective Service Act, May 8, 1917, c. 15 (Comp. St. 1918, Comp. St. 1919 Supp. § 2044a et seq.). On examination he was found physically qualified for military service, and on August 30 was certified by the local board accordingly. On October 19 he was certified by the district board as entitled to conditional exemption because of dependent relatives and as a person necessarily engaged in industry essential to the maintenance of the military establishment, under section 4 of the Selective Service Act. By section 4 of the regulations later promulgated by the President, all exemptions made prior to December

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

15, 1917, and all certificates in evidence thereof, were expressly revoked and made null from and after the last-named date. Later appellant filled out, signed, and swore to a questionnaire sent him by virtue of the new regulations, and was by the local board classified as subject to immediate call for military duty, but entitled as a conscientious objector to be assigned to noncombatant service. The district board, on appeal, confirmed this classification. Still later appellant was found, on new examination made under the rules, to be physically qualified, and was so duly notified. Still later he was notified to appear on April 1 for military duty and entrainment. He reported accordingly, received the instructions prescribed by section 161 of the regulations, and was ordered to report on the following day for entrainment to the military encampment. He failed so to report, resigned his employment, disappeared from the city of his residence, and remained away until after the armistice of November 11, 1918, after which he was indicted by a federal grand jury for violation of section 6 of the Selective Service Act in failing to comply with the order of the draft board to present himself for entrainment in the military service.

While this indictment was pending the United States district attorney, on the request of the adjutant general of the United States army and by direction of the Attorney General, caused appellant to be surrendered to the military authorities of the United States for a trial on a charge of desertion, and appellant was thereupon delivered into the custody of the sheriff of Cuyahoga county, Ohio, for detention pending the arrival of military guard. Appellant thereupon applied to the District Court for a writ of habeas corpus. After a hearing upon the merits the petition was dismissed, and the United States marshal ordered to take appellant into custody for delivery to the military authorities of the United States. This appeal is from the order denying the writ of habeas corpus.

[1] 1. Appellant's contention most strongly urged here is that the two exemption certificates issued to him in October, 1917, were never lawfully revoked or nullified, that they were thus in full force during all the subsequent proceedings to draft appellant into the military service, that he was therefore not legally subject to draft, and so was justified in refusing to obey the order to entrain for military service. The argument in support of this contention is substantially this:

That section 4 of the Selective Service Act of May 18, 1917, gives the district boards exclusive original jurisdiction over claims for industrial exemption, and makes the decisions of such boards "final except that, in accordance with such rules and regulations as the President may prescribe, he may affirm, modify or reverse any such decision"; that industrial exemptions, being expressly withdrawn from the consideration of the local boards, are excepted from the rules and regulations which by section 4 of the Selective Service Act above cited the President is authorized to prescribe for the local and district boards; and that accordingly, until the Act of May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044m), which expressly authorized

the President to call into service any one not theretofore unconditionally exempted, the President had no power (except on appeal from the district board, which was not taken) to withdraw the exemption in question.[1]

We think this contention without merit. Section 4 of the Selective Service Act of 1917 gave no absolute industrial or dependency exemption; it merely authorized the President to "exclude or discharge" from the draft persons engaged in industries essential to the maintenance of the military establishment and those whose status respecting dependents "renders their exclusion or discharge advisable"—no exemption or exclusion to "continue when a cause therefor no longer exists." Such exemption or exclusion was thus merely conditional and temporary, and contemplated consulting, not only individual, but public, interests. The President was also authorized, in his discretion, to create local boards, to appoint the membership of both local and district boards, and to make rules and regulations governing the organization and procedure of both local and district boards, and for appeals and reviews, as well as "all other rules and regulations necessary to carry out the terms and provisions of this section, and shall provide for the issuance of certificates of exemption, or partial or limited exemptions, and for *a system to exclude and discharge individuals from selective draft.*" (Italics ours.) Such authority was validly given. Selective Draft Law Cases, 245 U. S. 366, 389, 38 Sup. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856; Franke v. Murray (C. C. A. 8) 248 Fed. 865, 867, 868, 160 C. C. A. 623, L. R. A. 1918E, 1015, Ann. Cas. 1918D, 98; Angelus v. Sullivan (C. C. A. 2) 246 Fed. 54, 60, 158 C. C. A. 280.

The act plainly contemplated that the President might change his regulations from time to time, including questions of exclusion and exemption, as the exigencies seemed to him to warrant, and there is thus no merit in the thought that a conditional or temporary exemption, not commanded, but dependent upon the assertion by the President of the authority conferred by the basic act, must continue until that act should be changed. The President had the undoubted right by general regulations to set aside all exemptions granted up to a specific date, as he unequivocally did by section 4 of his regulations referred to, which in express terms declares that—

"All exemptions and discharges made prior to noon on December 1, 1917, and all certificates in evidence thereof, are hereby revoked from and after noon on December 15, 1917, and all such certificates theretofore issued shall have no further validity."

[2] Equally without merit, in our opinion, is the proposition that the President's proclamation showed an intention not to make his new regulations retroactive, so far as they applied to those not already actually drafted. This contention invokes the second and third sentences in the extract from the President's "foreword" (November 2, 1917) to the new regulations referred to, which we print in the mar-

---

[1] It is not clear that appellant's contention in this respect extends to the dependency exemption; but we treat the question as fully as if it did.

gin—the same regulations which contain the express revocation of all previous exemptions and discharges and which established the questionnaire system.[2]

2. Appellant further contends that in the new proceedings subsequent to December 15, 1917, he duly presented his claim to exemption by reason of industrial occupation (as he had the right to do), that he was given no fair hearing upon this claim by either the local board or the district board, that the local board had no jurisdiction over the subject-matter, and that the district board made no final order or decision thereon which could be made the basis of an appeal to the President.[3] While the local board had no jurisdiction to decide the question of industrial exemption, it was its duty (under section 101, rule 32, of the Selective Service Act) to indorse upon the questionnaire its recommendation as to the merits of such claim, if made.

[3, 4] If appellant has been denied this exemption arbitrarily, unfairly, or by gross abuse of discretion, and without good-faith opportunity for hearing, he is entitled to relief by habeas corpus; otherwise, not. Franke v. Murray, supra, 248 Fed. 865, 869, 160 C. C. A. 623, L. R. A. 1918E, 1015, Ann. Cas. 1918D, 98; Napore v. Rowe (C. C. A. 9) 256 Fed. 832, 834, 168 C. C. A. 178; Arbitman v. Woodside (C. C. A. 4) 258 Fed. 441, 442, 169 C. C. A. 457. In our opinion the record does not bear out appellant's contention in these respects. In his questionnaire he answered in the negative the inquiry as to the existence of dependent relatives of any of the recognized classes. While answering in the affirmative the question whether he was engaged in an industrial enterprise necessary to the maintenance of the military establishment, he answered in the negative the question whether he claimed deferred classification on the ground that he was engaged in such enterprise; and although the printed instructions were explicit that if he intended to claim such discharge or deferred classification he must secure two supporting affidavits (blank forms of which were contained in the questionnaire), he did not present such affidavits therewith.

It is not claimed that any affidavits of this character were ever presented to the local board. There is no definite evidence that affidavits were presented to the district board, aside from the testimony of appellant, the general effect of which seems to be that a claim of indus-

---

[2] "There is no change in the essential obligation of men subject to selection. The first draft must stand unaffected by the provisions of the new regulations. They can be given no retroactive effect. The time has come for a more perfect organization of our man power. The selective principle must be carried to its logical conclusion. We must make a complete inventory of the qualifications of all registrants in order to determine, *as to each man not already selected for duty with the colors*, the place in the military, industrial or agricultural ranks of the nation in which his experience and training can best be made to serve the common good. This project involves an inquiry by the selection boards into the domestic, industrial and educational qualifications of nearly ten million men." (Italics ours.)

[3] Failure to take an appeal from a final order over which the Board had jurisdiction bars relief by habeas corpus. Ex parte Tinkoff (D. C.) 254 Fed. 912; Id. (C. C. A. 7) 254 Fed. 225, 165 C. C. A. 513; Ex parte Platt (D. C.) 253 Fed. 413.

trial exemption was made by appellant's business superior to the district board after appeal from the local board's adverse recommendation, and that supporting affidavits were later filed with that board, as well as appellant's written request for exemption. Appellant thinks at least one of such affidavits was furnished the district board previous to its denial of the claim of industrial exemption, but apparently one at least, if filed, was submitted long after such disallowance. Plainly the district board was not imperatively bound to consider affidavits presented after the questionnaire had been submitted (and after it had been acted upon by the district board), and especially in view of the answers previously given to the questions stated.[4] The record does not, however, indicate that appellant's claim for exemption or deferred classification was arbitrarily or unfairly rejected. The minute of the local board's action shows a classification of appellant as subject to military duty in noncombatant service—

"because it finds that industrial occupation not supported, and as a religious objector to war is in class 1 noncombatant."

A member of the local board testified that two of appellant's superiors in the industry told him in his office that appellant was not a "pivotal man" in the industry; and it is conceded that the local board granted a stay of the date of appellant's entraining for more than a month for the accommodation of the industry in which appellant was engaged. It clearly appears that appellant deliberately decided not to comply with the final order to entrain, because of his view that his former exemptions still held good. As to the district board: Its minute shows the classification stated:

"Because it finds that grounds in this claim not good for deferred classification. Proves right to noncombatant service."

It did not lose its otherwise final character (giving right of appeal to the President, which was not taken), or forfeit a presumption of good-faith action, by reason of the inclusion in parentheses of the words:

"Industrial claim lacks necessary supporting affidavits."

[5] The suggestion that appellant had the right to assume that his former certificates of industrial exemption made it unnecessary for him to claim the same under the questionnaire is plainly negatived by the reference therein to section 4 of the rules and the express statement that—

"All exemptions and discharges made prior to the date of these rules and regulations and all certificates of evidence thereof are hereby revoked, and all such certificates heretofore issued shall have no further validity."

Careful examination of the record suggests no reason to doubt the correctness of the trial court's conclusion that no abuse of discretion or arbitrary action was shown in denying petitioner's claim for deferred classification on industrial grounds.

[4]Appellant's testimony may mean that his claims for exemption presented to the district board included one for dependency. That, however, is immaterial to the result.

3. The conclusion reached in the first paragraph of this opinion makes it unnecessary to consider whether appellant waived the right to insist on the asserted finality of the exemptions previously granted · him—by filling out and filing his questionnaire and therein disclaiming such exemption, by procuring or participating in the extension of the effective date for his entrainment, and in obeying the call to appear for military duty and entrainment.

[6] 4. In contemplation of law appellant was inducted into the military service of the United States on the 1st day of April, 1918, when he received his preliminary instructions and his order to report for entrainment. Failure to so report subjected appellant to military law. This is so, not only by virtue of section 2 of the Selective Service Act (Comp. St. 1918, 1919 Supp. to Comp. Stat. 1916, § 2044b), which declares that "all persons drafted into the service of the United States * * * shall, from the date of said draft or acceptance, be subject to the laws and regulations governing the regular army," but also by virtue of article 2 of the Articles of War (Comp. St. § 2308a), which makes subject thereto, and thus "subject to military law," not only officers and soldiers belonging to the regular army, as well as volunteers, but also—

"all other persons lawfully called, drafted or ordered into, or to duty or for training in the said service [the military service of the United States] from the dates they are required by the terms of the call, draft or order to obey the same." U. S. Comp. Stat. 1916, § 2308a; Franke v. Murray, supra, 248 Fed. at page 868, 160 C. C. A. 623, L. R. A. 1918E, 1015, Ann. Cas. 1918D, 98.

Appellant was thus subject to summary arrest and delivery to the military authorities. U. S. Comp. Stat. 1916, §§ 2296, 2297.

[7] 5. The pendency of the indictment under section 6 of the Selective Service Act of May 18, 1917, was no bar to appellant's arrest for trial by the military court. The section in question, so far as pertinent here, merely provides that any person who "shall fail or neglect fully to perform any duty required of him in the execution of this act shall, *if not subject to military control* [italics ours], be guilty of a misdemeanor," and subject to the punishment prescribed in the section. Appellant had no right to elect trial by the civil courts, nor were the civil officers bound to bring him to trial. They had, to say the least, a right to surrender him to the military authorities, whose jurisdiction was clear.

It results from these views that the judgment of the District Court, which in effect remanded appellant to the custody of the military authorities, must be affirmed.

This conclusion makes it unnecessary to consider the question of appellant's right, under rule 32 of this court (202 Fed. xx, 118 C. C. A. xx), to be admitted to bail, or whether the action of the District Court in causing appellant's surrender to the military authorities subsequent to the order denying the writ of habeas corpus, and pending appeal to this court, was improvident.