**UNITED STATES ex rel. DIAMOND v. SMITH, Commanding Officer of UNITED STATES ARMY, FORT DEVENS, AYER, MASS. et al.**

No. 6621.

District Court, D. Massachusetts.

Nov. 12, 1942.

Albert & Albert, of Boston, Mass. (Alfred A. Albert, of Boston, Mass.) for petitioner.

Edmund J. Brandon, U. S. Atty., and William J. Koen, Asst. U. S. Atty., both of Boston, Mass., for respondents.

FORD, District Judge.

This is an application for a writ of habeas corpus filed October 26, 1942, on behalf of William Louis Diamond. The petition alleges that Diamond is wrongfully detained and imprisoned by the Commanding Officer of the United States Army, at Fort Devens, Ayer, Massachusetts. A summons to show cause was returnable on November 2, 1942. A return was filed (see Walker v. Johnston, 312 U. S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830) on behalf of the respondent Commanding Officer alleging that "William L. Diamond is now and has been for some time past a member of the Army of the United States and as such is subject to Army control and military law".

A hearing was held on November 2, 1942, with the petitioner present. The latter, offered the opportunity to submit evidence on his own behalf, declined to do so

as the facts involved were agreed upon and are as follows:

Diamond properly registered for service, was placed in Class 1A and appeared at his Local Board No. 137 at Southbridge, Massachusetts, on September 2, 1942, in response to an order to report for induction into the United States Army. From there he was sent to the United States Army Recruiting and Induction Station for the Seventh Recruiting and Induction District at Springfield, Massachusetts, where he was physically examined and accepted for service, but refused to take the oath administered to all men successfully passing the physical examination. (See Army Regulations, No. 615-500, Paragraphs 13 d and e issued by the War Department, September 1, 1942, superseding Mobilization Regulations, No. 1-7, dated October 1, 1940). Diamond was then segregated from others of the same group who were being sworn in, taken into another room and questioned as to his reasons for refusal to take the oath. He stated that as one of Jehovah's Witnesses he could not conscientiously take any oath and that he was opposed to both combatant and non-combatant service in the Army. Diamond was told that the oath would be administered again to him and regardless of whether or not he took it he would be considered inducted into the Army. The oath being read, Diamond refused to take it. He was then, by written order of the officers in charge dated September 2, 1942, placed in the Enlisted Reserve Corps of the United States Army and was ordered to report to Fort Devens for active duty on September 16, 1942. Diamond did not report for active duty on September 16, 1942, whereupon he was taken into custody by authority of the United States and is now being held at Fort Devens.

It is the contention of Diamond that he was not legally inducted into the Army of the United States and, consequently, is not subject to its jurisdiction; that if he is guilty of an offense with respect to the Selective Training and Service Act of 1940 he should be tried in a civil court.

■ The sole question this case presents is: Was Diamond properly inducted into the Army? If he was properly inducted, he is subject to the jurisdiction of the Army and military law. If he was not inducted, he is subject only to civil law. Selective Training and Service Act of 1940, c. 720, Section 11, 54 Stat. 885, 50 U.S.C.A.Appendix, § 311;[1] United States v. Rappeport, D.C., 36 F.Supp. 915, 918; see Conference Report on the Selective Training and Service Act of 1940, Cong.Record, Vol. 86, part XI, pp. 12033-12040 (12039); Senator Sheppard's explanation of the Conference Report, Cong. Record, Vol. 86, Part XI, p. 12082. (Cf. the different language of Selective Draft Act of 1917, c. 15, Section 2, 40 Stat. 76, 77, 50 U.S.C.A.Appendix, § 202, which, in part, provides: "All persons drafted into the service of the United States * * * shall, from the date of said draft or acceptance, be subject to the laws and regulations governing the Regular Army"; see Ex parte Thieret, 6 Cir., 268 F. 472, 478, and cf. Article 2 of the Articles of War, c. 227, subchapter II, § 1, 41 Stat. 787, 10 U.S.C.A. § 1473).

Neither the Selective Training and Service Act of 1940, c. 720, Section 11, 54 Stat. 885, 50 U.S.C.A.Appendix, § 311, nor the Service Extension Act of 1941, 55 Stat. 626-628, 50 U.S.C.A.Appendix, § 351, et seq., provides for the procedure for induction into the Army; and the rules and regulations promulgated under the above mentioned Acts cast little light upon the proper procedure for induction. But Army Regulations No. 615-500, issued by order of the Secretary of War on September 1, 1942, superseding Mobilization Regulations No. 1-7; dated October 1, 1940, set out in Section II paragraphs 13 d and e a procedure for induction. Subdivisions d and e of paragraph 13 read:

"d. Induction.—Upon completion of the physical examination and after certification by a medical officer, selectees found to be physically and mentally fit for general military service will be inducted.

"e. Induction ceremony.

"(1) The induction will be performed by an officer in a short, dignified ceremony in which the men are administered the oath, Article of War 109:

[1] "* * * No person shall be tried by any military or naval court martial in any case arising under this Act unless such person has been actually inducted for the training and service prescribed under this Act or unless he is subject to trial by court martial under laws in force prior to the enactment of this Act."

[Here follows form of oath]

\*　　\*　　\*　　\*　　\*

"(4) They will then be informed that they are now members of the Army of the United States and given an explanation of their obligation and privileges. In the event of refusal to take the oath (or affirmation) of allegiance by a declarant alien or citizen he will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States. \* \* \* "

■ Thus, if this regulation has the force of law (United States v. Eliason, 16 Pet. 291, 301, 10 L.Ed. 968; Davis v. Woodring, 72 App.D.C. 83, 111 F.2d 523, 525; Nordman v. Woodring, D.C., 28 F. Supp. 573, 574), it seems if a man successfully passes the physical examination and is accepted by the Army for training and service, he is inducted into the Army whether he takes the oath administered to him or not.

Further, there is another approach. It has been seen the Act itself does not set out the procedure for induction. However, under the principle of the case of Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876, 881, a person has been lawfully inducted into the military service when all the steps prescribed by statute and regulations having the force of law have been taken. The pertinent rules and regulations in force at the time Diamond reported to the induction center provide for the selection of men to fill induction calls, delivery of men to induction centers, and reception of men at induction centers. Selective Service Regulations, 2d Ed., Sections 632.3–633.8. Section 629.21 provides for the physical examination of draftees by the armed forces; and Section 633.9 reads: "At the induction station, the selected men found acceptable will be inducted into the land or naval forces". Section 601.7 reads: "An 'inducted man' is a man who has become a member of the land or naval forces through the operation of the Selective Service System."

There is no provision in the Act or regulations requiring the taking of an oath. However, Article 109 of the Articles of War, 41 Stat. 787, 809, 10 U.S.C.A. § 1581, reads: "At the time of his enlistment every soldier shall take the following oath or affirmation: [here the oath is set out]. This oath or affirmation may be taken before any officer."

■ Here, we find the requirement of an oath. If "enlistment" in this Article applies to drafted men as well as those who voluntarily enlist (see Franke v. Murray, 8 Cir., 248 F. 865, L.R.A.1918E, 1015, which held it applied only to voluntary enlistments, and United States v. Prieth et al., 2 Cir., 251 F. 946, 954, contra) and since the Article only requires "every soldier" to take the oath, it follows that persons taking the oath are already members of the Army. He has been accepted as a soldier; he has already been inducted. The taking of the oath would seem to follow induction, not precede it.

When a draftee is accepted by the Army for service and training, all the requirements of the Act and regulations have been satisfied. The completion of the steps outlined in the Act and regulations operates as induction. The taking of an oath if required by Army regulations or the Articles of War does not affect induction. The draftee has already been inducted when he reaches that stage. By this time he is a soldier. The taking of the promissory oath of allegiance is a formality, merely a subsequent requirement to solemnify the occasion. In Ex parte Billings, D.C., 46 F.Supp. 663, 667, the court said: "Induction is completed upon acceptance by the government and irrespective of the desires, acts and mental attitudes of the party affected. Upon acceptance by the government, induction occurs by operation of law. It is something over which the party affected, petitioner in this case, has no control. It is not the acceptance by him of the oath, but the acceptance by the government of him as a soldier". See dictum in Stone v. Christensen, D.C., 36 F.Supp. 739, 741.

■ I have no hesitancy in finding Diamond was inducted into the armed forces of the United States and is subject to the jurisdiction of the Army and military law.

This matter, as seen, was heard November 2, 1942. On that day the writ was denied and the petition dismissed. In this memorandum the reasons for that action are set forth in detail.