**BILLINGS v. TRUESDELL, Major General, U. S. Army.**

**No. 2661.**

Circuit Court of Appeals, Tenth Circuit.

April 30, 1943.

Lee Bond, of Leavenworth, Kan., for appellant.

Lester R. Luther, Asst. U. S. Atty., of Topeka, Kan., and Allan R. Browne, Major, JAGD, Staff Judge Advocate, of Kansas City, Mo. (George H. West, U. S. Atty., and Eugene W. Davis, Asst. U. S. Atty., both of Topeka, Kan., and Bert E. Church, Captain, JAGD, Litigation Officer, Seventh Service Command and Frank E. Shaw, Colonel, J A G D, both of Omaha, Neb., on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge, delivered the opinion of the court.

Arthur Goodwyn Billings, hereinafter called the petitioner, filed his application for a writ of habeas corpus directed to Major General Karl Truesdell, Commanding Officer, Reception Center, United States Army, Fort Leavenworth, Kansas, in whose custody petitioner was detained. The writ was issued and Major General Truesdell duly filed his return thereto. After a hearing, the trial court entered an order discharging the writ and remanding petitioner to the custody of Major General Truesdell. The petitioner has appealed.

The petitioner is thirty-one years of age. He graduated with honors at the University of Kansas in 1933. Thereafter, he attended the University of Paris for two years and served three years in the American Diplomatic Service at Moscow. In 1938 he spent a short vacation in China and Japan and in the fall of that year entered Harvard University. After three years of studies at Harvard, he received his Master's Degree and passed the general examination for a Doctor's Degree but did not write the thesis required for the latter degree. He became a professor in the University of Texas in the fall of 1941 where he remained until called for induction into the Army.

506

Petitioner registered under the Selective Training and Service Act of 1940,[1] 54 Stat. 885, 50 U.S.C.A.Appendix § 301 et seq., in the first registration with local board No. 1, for Ottawa County, Minneapolis, Kansas. He was classified in Class 1-B because of a defective eye. Later, he was reclassified and placed in Class 1-A. He sought reclassification on the ground that he was a conscientious objector. The local board denied his claim for reclassification. From that ruling he appealed. The decision of the local board was sustained by the Board of Appeals. Petitioner determined that he would not serve in the armed forces of the United States. He believed, however, that upon his physical examination, he would be rejected because of defective vision in one eye. He determined to comply with Selective Service requirements up to the point where the civil jurisdiction ceased and military jurisdiction commenced, or just short of submitting himself to the latter jurisdiction. He made inquiries of Selective Service officials in Texas and of others to ascertain up to what point he could comply with the requirements of the Act and the regulations and orders made pursuant thereto, including the order of his local board to report for induction, and stop short of actual induction into the Army. He was ordered by the local board to report to Minneapolis, Kansas, for induction into the armed forces. With the consent of the local board, he joined, at Victory Junction, Kansas, the group selected for induction, and was transported to the induction station at Fort Leavenworth, Kansas. He went to the barracks, was furnished his meals and lodging, and submitted to a physical and mental examination. He was advised that he had passed and would be accepted. He was then taken to a room at the induction station and in the presence of several officers was asked to stand and take the oath, which he refused to do. The oath of induction was then read to him and he was asked if he subscribed to that oath. He stated he did not. He was then informed that he was in the Army. He was then ordered to submit to having his fingerprints taken. He refused so to do. He endeavored to surrender to the civil authorities. Military charges were then preferred against him for refusing to be fingerprinted and he was confined in the guardhouse.

He predicated his petition for the writ of habeas corpus on the alleged ground that he had not been inducted into the Army and that, therefore, the military authorities had no jurisdiction over him.

Section 3 of the Act, as amended, 50 U.S.C.A.Appendix § 303, in part, provides:

"(a) Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States who is between the ages of twenty and forty-five at the time fixed for his registration, * * * shall be liable for training and service in the land or naval forces of the United States. * * *"

Section 10 of the Act, 50 U.S.C.A.Appendix § 310, in part, provides:

" (a) The President is authorized—

"(1) to prescribe the necessary rules and regulations to carry out the provisions of this Act; * * *."

Section 11 of the Act, 50 U.S.C.A.Appendix § 311, makes it a criminal offense for any person knowingly to fail or neglect to perform any duty required of him under or in the execution of the Act or the rules or regulations made pursuant thereto, and provides that "No person shall be tried by any military or naval court martial in any case arising under this Act unless such person has been actually inducted for the training and service prescribed under this Act or unless he is subject to trial by court martial under laws in force prior to the enactment of this Act."

The applicable regulations promulgated under the Act provide: That immediately upon determining which men are to report for induction, the local board shall prepare for each man an order to report for induction, in duplicate, and mail the original to the registrant; that from the men selected to fill the quota the local board shall designate one to be the leader of the group and one or more to be assistant leaders; that the leaders and assistant leaders shall have such authority as is necessary to deliver the group to the induction station; that the local board shall prepare government requests for transportation and for meals or lodgings for civilian registrants; that at the time and place designated for the selected men to report for delivery, the local board shall call the roll of selected men, read and issue the appointment of the leader and assistant leaders, turn over to the leader the transportation, meal and

---

[1] Hereinafter referred to as the Act.

lodging requests, and the records for the induction station; and order the selected men to obey the leader and assistant leaders and report to the induction station; that the commanding officer of the induction station shall have the selected men transported from the railroad station or bus terminal to the induction station and have them provided with food and lodging after their arrival and pending their induction or rejection; and that at the induction station, the selected men found acceptable will be inducted into the land or naval forces. Tit. 32, Fed.Reg., December 31, 1941, §§ 633.1(a), 633.2(a) (c), 633.4(a), 636.6(a), 633.8, 633.9.

MR. 1-7, Par. 13e, (War Department Circular No. 136, 5-7-1942), in part, provides:

"(1) All men successfully passing the physical examination will be immediately inducted into the Army. The induction will be performed by an officer in a short, dignified ceremony in which the men are administered the oath, Article of War 109:

" 'I, ———, do solemnly swear (or affirm) that I will bear true faith and allegiance to the United States of America; that I will serve them honestly and faithfully against all their enemies whomsoever; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the rules and Articles of War.' * * *

"(4) They will be informed that they are now members of the Army of the United States and given an explanation of their obligation and privileges. In the event of refusal to take the oath (or affirmation) of allegiance by a declarant alien or citizen he will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States. * * *"

■ ■ The underlying theory of the Act is that the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system of selective compulsory military training and service.[2] Section 3 (a) of the Act, with certain exceptions not here material, makes every male citizen of the United States between the ages of twenty and forty-five at the time fixed for his registration, liable for training and service in the land or naval forces of the United States. When a selected man has reported for induction and been transported to the induction station and found acceptable, induction is not a matter of choice with him. Being subject to compulsory training and service, having reported for induction, and having passed the requisite examinations, it is the duty of the military authorities immediately to induct him and he cannot avoid induction by refusing to take the oath. The regulations, in effect, provide that refusal to take the oath shall not alter in any respect the selected man's obligation to the United States. Induction was completed when the oath was read to petitioner and he was told that he was inducted into the Army.

We conclude, therefore, that the military authorities had jurisdiction over petitioner and that the writ was properly discharged.

Affirmed.

---

[2] § 1, 54 Stat. 885, 50 U.S.C.A. Appendix § 301.