**CURIA v. PILLSBURY Commanding Officer, Fort Hayes Barracks, Columbus, Ohio.**

No. 771.

District Court, S. D. Ohio, E. D.

Feb. 15, 1944.

Milton L. Farber, of Columbus, Ohio, for petitioner.

R. J. O'Donnell, Asst. U. S. Atty., of Columbus, Ohio, and Hubert H. Lind, Major, J. A. G. D., Asst. Staff Judge Advocate, Fifth Service Command, for respondent.

UNDERWOOD, District Judge.

This cause comes into this Court for consideration upon a petition for a writ of habeas corpus filed by Joseph Anthony Curia.

By agreement of counsel, the evidence before the Court has been limited to certain stipulated facts and one exhibit "Armed Forces Original D.S.S. Form 221, Report of Physical Examination and Induction". The case has been submitted upon this evidence and the briefs of counsel.

The facts of the case, as stipulated, may be stated as follows: The petitioner is a citizen of the United States and normally a citizen and resident of Hepzibah, West Virginia, now being held prisoner in the Guard House, Fort Hayes, Columbus, Ohio, charged by military authorities with a violation of the 64th Article of War, 10 U.S.C.A. § 1536, and waiting trial by court-martial on said charge. He is in custody of Colonel Dennis C. Pillsbury, Commanding Officer of Fort Hayes, Columbus, Ohio.

The circumstances prior to the incarceration have been stipulated as follows: On or about June 30, 1942, the petitioner registered with Selective Service Board No. 2, Clarksburg, West Virginia. On December 8, 1942, he filed Form No. 47 for classification as a conscientious objector with his local board and said application was denied. He was classified 1–A and so notified. Appeal was taken on or about January 13, 1943, to Appeal Board No. 1, Harrison County, West Virginia. Upon receipt of the appeal, the entire case was transmitted to the Department of Justice and by the Department referred to the Honorable James S. McCleur, Hearing Officer for conscientious objector cases for that district. Mr. McCleur conducted a hearing on May 21, 1943, at which the petitioner appeared and testified. Thereafter the hearing officer made his report to the Attorney General recommending that petitioner's claim as a conscientious objector be denied. The Attorney General approved and concurred in the recommendation and so notified the Appeal Board. The Appeal Board on or about August 12, 1943, by a vote of five to none upheld the classification of 1–A made by the local board. The petitioner was so notified on or about August 18, 1943.

On or about August 31, 1943, the local board sent petitioner, and the petitioner received, an order to report for induction at 8:00 A.M., September 13, 1943, at the U. S. Army's induction station, Clarksburg, West Virginia. During the morning of September thirteenth, the petitioner appeared at said induction station and informed the Commanding Officer of his conscientious objections and his desire not to wear a uniform or use weapons. The officer replied that the petitioner's brother had been previously called to the same induction station and had been rejected; that there was a possibility that the petitioner might also be rejected and that it was not the time or place to discuss conscientious objections.

Thereafter, the petitioner submitted to a physical and mental examination and finger printing. "DSS, Form 221" was filled out showing on the second page, Section III, the name of the nearest relative to be notified in case of emergency and the petitioner signed his name at the bottom of Section III. On the first page the army serial number assigned to him was inserted. All of this being done before noon on September 13, 1943, and while the petitioner was still in the induction station. Thereafter he left the induction station without permission of the Commanding Officer.

On the same day, petitioner was taken into custody at his home by two members of the West Virginia State Police, acting at the request of the Commanding Officer of the induction station and the Clerk of petitioner's local board. The police officers returned petitioner to the induction station at 4:30 P.M., where he was notified by the Commanding Officer that he had passed the mental and physical examinations and had been accepted by the Army. Petitioner was asked to take the oath of induction and refused. The Commanding Officer read the oath and the Articles of War to him and informed him that he was a member of the Army of the United States and that he would be given a three-week furlough.

The petitioner failed to report at the expiration of his furlough and he was again taken into custody by West Virginia State Troopers at the instance of the Commanding Officer of the induction station and the Clerk of petitioner's local board. He was taken by the troopers to the railroad station at Clarksburg, West Virginia, and there, in the presence of the Commanding Officer and the Clerk of his local board, was placed on board a train for Fort Hayes, Columbus, Ohio, being sent in charge of an acting corporal.

It has been stipulated and agreed by counsel that the only question before the Court is whether or not the petitioner was lawfully inducted into the Army of the United States on September 13, 1943. All questions regarding the propriety of his classification have been waived for the purposes of this case.

■ The apparent reason for this stipulation is found in the Selective Training and Service Act of 1940, which provides in part: "* * * No person shall be tried by any military or naval court martial in any case arising under this Act unless such person has been actually inducted for the training and service prescribed under this Act or unless he is subject to trial by court martial under laws in force prior to the enactment of this Act. * * *" Section 311, Title 50 U.S.C.A. Appendix. It is therefore clear, that a person can be tried for an offense arising under the Selective Training and Service Act by court martial only after induction. Under this theory of the case, the determining factor must be whether or not the petitioner had been lawfully inducted into the Army on September 13, 1943.

The stipulated facts show that the petitioner was ordered by his local selective service board to report for induction on September 13, 1943. The right and power of the board to make such an order is unquestioned in this proceeding. Curia did report and by so doing obeyed the order of his board. The fact that he offered some objection to the procedure can be of no importance in view of the further fact that he did submit to both mental and physical examination, and finger printing. After these steps had been taken and "DSS Form 221" had been completed and signed by the petitioner and his army serial number placed thereon, he left the induction station without permission of the Commanding Officer. Insofar as the evidence now before the Court shows, nothing further remained to be done by the petitioner to complete his induction except to take the oath. The remaining steps, with the exception of the oath, were those to be taken by the army authorities.

■ When Curia was apprehended and returned to the induction station on the same day, he refused to take the oath and both the oath and the Articles of War were read to him. At the same time, he was informed that he was in the army. It has been repeatedly held that the taking of the oath is not essential to induction under the Selective Training and Service Act. United States v. Smith, D.C., 47 F.Supp. 607; Billings v. Truesdell, 10 Cir., 135 F.2d 505; Ex parte Billings, D.C., 46 F.Supp. 663. Under the Selective Service Act 1917, 50 U.S.C.A. Appendix, § 201 et seq., it was likewise held that inductees could become subject to military law without the taking of an oath. Ex parte Thieret, 6 Cir., 268 F. 472; United States v. Bullard, D.C., 290 F. 705. Admittedly, the Act of 1917 and the Act of 1940 are fundamentally different with respect to the time at which military jurisdiction attaches, but Par. 13e, Army Regulation 615–500, dated 1 Sept. 1942, provides: "(4) They will then be informed that they are now members of the Army of the United States and given an explanation of their obligation and privileges. In the event of refusal to take the oath (or affirmation) of allegiance by a declarant alien or citizen he will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States * * *". This Court, therefore, has no hesitation in finding that the taking of the oath of allegiance is not essential to the induction of a draftee under the Selective Training and Service Act of 1940 and the pertinent regulations of the War Department.

■ This Court is of the opinion that when Curia presented himself at the induction station, underwent the mental and physical examinations, was finger printed and signed the required form, he had done all things necessary to be done by him to effect his induction. One act, and one act only, remained to be done to complete the induction; that act was the acceptance of petitioner by the Army. It is immaterial that the draftee did not remain at the induction station to be informed of the acceptance; he had fulfilled the requirements and the acceptance, being a matter for the army to decide, was beyond his control or interference. It follows, therefore, that Curia's induction, insofar as the purposes of this case are concerned, was completed when he was accepted by the army and he was so informed. Ex parte Billings, D.C., 46 F.Supp. 663; Billings v. Truesdell, 10 Cir., 135 F. 2d 505; United States v. Smith, D.C., 47 F. Supp. 607. The principle involved was succinctly stated in the Smith case: " 'Induction' is completed upon acceptance by the government of the draftee irrespective of the desires, acts and mental attitudes of the draftee, and it is not the draftee's acceptance of the oath, but the acceptance by the government of him as a soldier that completes [the] induction." 47 F.Supp. 607.

It has been forcibly argued by counsel for the petitioner, that induction could not be completed until the draftee had been accepted by the government and he had been so

informed. It is contended further that the government was without power or jurisdiction to return the petitioner to the induction station on the afternoon of September thirteenth, and inform him of such acceptance. This argument loses its apparent force when tested by the provisions of the Articles of War, construed with the provisions of the Selective Training and Service Act of 1940.

Section 311, Title 50 U.S.C.A.Appendix, contains that part of the Selective Training and Service Act which provides: " * * * No person shall be tried by any military or naval court martial in any case arising under this Act unless such person has been actually inducted for the training and service prescribed under this Act or unless he is subject to trial by court martial under laws in force prior to the enactment of this Act. * * *" It follows that no person not otherwise subject to military law may be tried by court martial for an offense arising under the Selective Training and Service Act, unless such person has been actually inducted. The limitation is no broader than this; it has no direct application to the particular contention of the petitioner now under consideration. At the time Curia was returned to the induction station, he was charged with no crime and there was no purpose of trying him before any court martial. The contention of the petitioner is that the military authorities had no jurisdiction over him and were without legal right to return him to the induction station to complete the army procedure.

▆ When a draftee has obeyed the order of his local board to report for induction and has presented himself at the proper station, he has complied with the requirements of the civil authority. It is unthinkable that having done so, he enters a twilight zone where his responsibility to civil authority has ceased and yet military authority has not yet begun to function. Congress could never have intended to saddle upon the army authorities the duty to receive and process millions of men, without any control or authority to carry out the duties imposed. The particular provisions of the Act relative to the control, supervision, travel, maintenance and care of draftees prior to the time of actual induction cannot be construed in any light other than that Congress intended that once having reported, the draftee comes under control of the military authorities. This temporary control is terminated when the registrant is rejected and becomes fixed when he is actually inducted.

If any doubt exists upon this point, it is dispelled by the provisions of the Second Article of War, 10 U.S.C.A. § 1473, which provides in part:

"The following persons are subject to these articles and shall be understood as included in the term 'any person subject to military law,' or 'persons subject to military law,' whenever used in these articles; * * *

"(a) All officers, members of the Army Nurse Corps, warrant officers, Army field clerks, field clerks Quartermaster Corps, and soldiers belonging to the Regular Army of the United States; all volunteers, from the dates of their muster or acceptance into the military service of the United States; *and all other persons lawfully called, drafted, or ordered into, or to duty or for training in, the said service from the dates they are required by the terms of the call, draft or order to obey the same; * * *1"*

It is to be noted that draftees are, by the express provisions of this Article, made subject to military law and the Articles of War "from the dates they are required by the terms of the call, draft or order to obey the same".

▆ The Second Article of War must be construed with the limiting provisions of the Selective Training and Service Act. These provisions limit the scope of the Second Article by prohibiting trial by court martial of one not otherwise subject to military law, for offenses against the Selective Training and Service Act. It goes no further. It follows, therefore, that for all other purposes, a draftee becomes subject to military law and the Articles of War from the date upon which he is ordered to report. In Ex parte Thieret, 268 F. 472, 478, the Sixth Circuit Court of Appeals held that irrespective of the particular provisions of Selective Service Act of 1917, a draftee became subject to military law from the time he received his preliminary instructions and his order to report for entrainment, by virtue of the Second Article of War. It was also held in the same case that the draftee was subject to summary arrest and delivery to the military authorities.

There can be no doubt that at least in cases such as the instant case, where the

---

1. Emphasis by author.

draftee has presented himself at the induction station, he is from that moment subject to military orders, control and jurisdiction to the same extent as members of the Regular Army of the United States, listed with him in the Second Article. Under such circumstances, the army has the same right to control his actions and to remove him from a place where he has no right to be, to a place where he is required to be, as if he were then actually in the army. Whether the draftee be just outside the doorway of the induction station, or at home, or away from home, army authorities have the right to compel him to attend where his presence is required. If it be necessary to send someone for him, they have both the right and power to do so. Army authorities cannot, however, try the draftee by court martial for offenses against the Selective Training and Service Act, but for all other purposes their control and jurisdiction are complete.

When Curia presented himself at the induction station, he was subject to military law and required to obey the orders of his superior officers. Having absented himself without leave, the military authorities had the right to have him brought back and to proceed as though he had never left.

It is the conclusion of this Court that petitioner was lawfully inducted into the Army of the United States on September 13, 1943, and that he is subject to military jurisdiction. The petition will therefore be dismissed and the writ denied.

Order accordingly.